Norman SAGE, Plaintiff-Appellant,

v.

FREEDOM MORTGAGE COMPANY, Defendant-Appellee.

No. 80-7717.

United States Court of Appeals, Eleventh Circuit.

May 19, 1983.

Bowen, Derrickson, Goldberg & West, Ralph Goldberg, Atlanta, Ga., for plaintiff-appellant.

Aiken & Ward, Gregory A. Ward, Lewis E. Hassett, Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT and CLARK, Circuit Judges.[*]

VANCE, Circuit Judge:

A panel of this court reversed a summary judgment for the lender defendant[1] holding itself bound by the fifth circuit's decision in *Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir.1976), *cert. denied,* 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977).[2] Applying *Pollock* the panel held that the lender violated section 129(a)(1) of the Truth-in-Lending Act, 15 U.S.C. § 1639(a)(1) by not making a disclosure of net loan proceeds separate from other required or permitted disclosures.[3] Sitting en banc the court has reconsidered the correct-

---

[*] Judges Hill and Anderson did not participate in the consideration or decision of this case.

1. 675 F.2d 1208 (11th Cir.1982), vacated by decision for rehearing en banc.

2. This decision was binding precedent under our holding in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

3. The panel also held that under the circumstances of this case use of the phrase "amount of loan" constituted a misleading optional disclosure in violation of Reg. Z § 226.6(c). 675 F.2d at 1212. The misleading character of the phrase was based on the premise that the omitted "net loan proceeds" was a required disclosure. Since we now reach a contrary conclusion with respect to the net loan proceeds disclosure, the premise on which we found the second violation also fails.

ness of the *Pollock* rule in the light of *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). We now conclude that the *Pollock* rule is in error, decline to follow it as precedent in this circuit, and affirm the district court.

The *Pollock* court held that section 1639(a) [4] required disclosure of three different items, (1) the amount of cash given to debtor or on his behalf (the "net loan proceeds"), (2) individually itemized charges that are part of the credit extended but not part of the finance charge, and (3) the total of the first two items (the "amount financed"). 535 F.2d at 298.

This case involved a real estate transaction. Here the itemized charges referred to in subsection two of section 1639(a), which were expenses usually thought of as "closing costs," were paid out of other funds and were not part of the credit extended. As a consequence the "net loan proceeds" and the "amount financed" fortuitously equal the same number. The disclosure statement correctly reflected the amount financed but did not have a separate listing of the "net loan proceeds." The panel held that the lender's failure to list the net loan proceeds as a separate item was misleading and violated the Act.

4. The pertinent provisions of § 1639(a) as then in effect were as follows:

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

(1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).

Repealed by Truth in Lending Simplification and Reform Act, Pub.L. No. 96–221, Title VI § 614(d)(1), 94 Stat. 168, 180 (1980). The repeal was made effective two years and six months after March 31, 1980 by Pub.L. No. 97–110, Title III § 301, 95 Stat. 1513, 1515 (1981).

The Act contains a broad grant of authority to the Federal Reserve Board to prescribe regulations to carry out the Act's purposes. 15 U.S.C. § 1604. Regulation Z, 12 C.F.R. § 226, which was promulgated pursuant to that grant of authority does not require that the disclosure statement contain net loan proceeds as a separate item. In pertinent part the regulation requires disclosure of

(1) The amount of credit, excluding items set forth in paragraph (e) of this section, which will be paid to the customer or for his account to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term "amount financed."

12 C.F.R. § 226.8(d)(1). In implementing section 1639(a) the board thereby designed a disclosure requirement combining its subsections. The *Pollock* court held that this portion of the regulation must be read in the light of section 1639(a) to require a labeled disclosure of the net loan proceeds. The board has construed its regulation to the contrary in its staff interpretations [5]

5. *See, e.g.,* Federal Reserve Board (FRB) Staff Opinion Letter No. 1162, *excerpted in* [1974–1977 Special Releases Transfer Binder] Consumer Credit Guide (CCH) ¶ 31,555 (1977); FRB Staff Opinion Letter No. 1123, *excerpted in* [1974–1977 Special Releases Transfer Binder] Consumer Credit Guide (CCH) ¶ 31,473 (1976); FRB Staff Opinion Letter No. 982, *excerpted in* [1974–1977 Special Releases Transfer Binder] *Consumer Credit Guide* (CCH) ¶ 31,321 (1976). *Cf.* FRB Official Staff Interpretation No. FC–0155, *excerpted in* 12 C.F.R. § 226 app. at 816 (1982) (allowing terms for unpaid balance and unpaid balance of cash price to be combined or one omitted where the amounts are identical); FRB Official Staff Interpretation No. FC–0114, *excerpted in* 12 C.F.R. § 226 app. at 774 (1982) ("§ 226.8(d)(1) does not require a creditor to itemize component parts of the amount remaining after excluding all charges that are not part of the finance charge from the amount financed"); FRB Official Staff Interpretation No. FC–0110, *excerpted in* 12 C.F.R. § 226 app. at 770–71 ("§ 226.8(d)(1) contemplates existence of some total loan figure ... [but] requires no specific terminology to be used").

and it so argued before the court as amicus curiae in *Pollock*. The court rejected the board's position holding that the regulation as construed by the board was beyond the board's power under the statute. 535 F.2d at 298.

A Unit B panel of the fifth circuit recently concluded in *Smathers v. Fulton Federal Savings and Loan Association,* 653 F.2d 977 (5th Cir.1981), that another portion of the *Pollock* opinion could no longer be regarded as binding precedent in the light of the Supreme Court's intervening opinion in *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). A portion of the *Milhollin* language relied on was as follows:

> And deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. *Unless demonstrably irrational,* Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive for several reasons.
>
> The Court has often repeated the general proposition that considerable respect is due "the interpretation given [a] statute by the officers or agency charged with its administration." An agency's construction of its own regulations has been regarded as especially due that respect. This traditional acquiescence in administrative expertise is particularly apt under TILA, because the Federal Reserve Board has played a pivotal role in setting [the statutory] machinery in motion...." As we emphasized in *Mourning v. Family Publications Service,* 411 U.S. 356 [93 S.Ct. 1652, 36 L.Ed.2d 318] (1973), Congress delegated broad administrative lawmaking power to the Federal Reserve Board when it framed TILA. The Act is best construed by those who gave it substance in promulgating regulations thereunder.

444 U.S. at 566, 100 S.Ct. at 797 (citations omitted) (footnote omitted) (emphasis added) (quoted in *Smathers,* 653 F.2d at 980).

The *Smathers* court concluded that although we previously had given deference to Federal Reserve staff opinions, *Milhollin*

required that weight of a much different quality be given. 653 F.2d at 981. Appellee Freedom Mortgage Company argues that the *Pollock* court and the panel in this case failed to apply the *Milhollin* standard in reviewing the board's implementation of section 1639(a).

The board perceived there to be a potential for conflict or overlap between the provisions of subsections 1639(a)(1) and 1639(a)(2). An example illustrates the basis of the board's concern. In a typical real estate transaction a variety of closing costs are frequently paid out of the mortgage loan proceeds. These expenses such as title insurance premiums, credit life premiums, surveying expenses, recording fees and the like are often paid to third persons on behalf of the borrower/purchaser. They are not part of the finance charge. The board suggested that expenses of this nature came within section 1639(a)(1) because they were part of "the amount of credit of which the obligor will have the actual use" but which will be paid "to another person on his behalf." Similarly they were includable within section 1639(a)(2) because they were charges which are included in the amount of extended credit but "not part of the finance charge." The *Pollock* court rejected the board's contention that Regulation Z was a permissible response to this potential conflict. It concluded that it was more reasonable to construe the language of subsection one so that it did not include charges covered by subsection two. 535 F.2d at 298.

The *Pollock* court's approach might well have been a more reasonable implementation of the statute than the approach the board elected. That, however, is not the question. Under *Milhollin* the only question before us is whether the board's discharge of its broad authority under 15 U.S.C. § 1604 was demonstrably irrational when it provided that disclosures under subsections of 1639(a) be combined. We conclude that we cannot make a determination of demonstrable irrationality. We therefore hold that the pertinent provision of Regulation Z is valid and must be given

effect and that the conflicting net loan proceeds disclosure requirement of *Pollock* cannot stand. In reaching this result we now agree with the seventh circuit which reexamined the question in the light of *Milhollin*. *Pridegon v. Gates Credit Union*, 683 F.2d 182, 194 (7th Cir.1982). It follows that the judgment of the district court granting summary judgment for the defendant should be affirmed.

AFFIRMED.

CLARK, Circuit Judge, with whom HATCHETT, Circuit Judge, joins, dissenting:

I dissent. In holding that a lender is not required to disclose to a borrower the amount of "net cash in fist"—the sum the borrower walks out of the finance company with—the majority deprives consumers in the three states of this circuit from knowing the most meaningful disclosure mandated by Congress in the Truth-in-Lending Act. The decision is regrettably reached without any logically reasoned basis, unless one concludes that it is reasonable to permit the Federal Reserve Board to ignore a clear mandate of Congress. To analyze the problem, one must look at the statute, the Board regulation, the financial disclosure statement furnished by Freedom Mortgage in this case, and the disclosure statement that should have been furnished.

### The Statute

**Section 1639. Consumer loans not under open end credit plans—Required disclosures by creditor**

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

(1) *The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.*

(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).

\* \* \* \* \* \*

15 U.S.C. sec. 1639(a) (emphasis added).

### The Federal Reserve Board Regulation

(d) *Loans and other nonsale credit.* In the case of a loan or extension of credit which is not a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following *items,* as applicable, shall be disclosed:

(1) *The amount of credit,* excluding items set forth in paragraph (e) of this section, which will be paid to the customer or for his account to another person on his behalf, *including* all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term "amount financed."

12 C.F.R. sec. 226.8(d)(1) (emphasis added).

### The Financial Disclosure Statement Furnished by Freedom

FREEDOM MORTGAGE

DISCLOSURE STATEMENT REQUIRED BY FEDERAL LAW · FEDERAL RESERVE REGULATION Z

Borrowers ___Norman A. Sage_____  Loan No. 124-19248_____

1. The FINANCE CHARGE on this transaction will begin to accrue on the date of disbursement of funds which is estimated to be June '26, 1979_____.

2. The AMOUNT OF LOAN in this transaction is $__40,000.00_____ bearing interest at__10.75__%.

3. The PREPAID FINANCE CHARGE on this transaction includes:

(a) Origination fee ___2%___ $ ___800.00___    (d) Mortgage insurance premium (1st yr.) $ ___200.00___.

(b) Loan Processing fee _____ $ ___-0-___    (e) Discount paid by seller _____ $ ___-0-___

(c) Prepaid interest (est.) _____ $ ___341.62___    (f) Application fee _____ $ ___-0-___

                           TOTAL ......... $ ___1,341.62___.

4. The amount of the loan less the prepaid finance charge equals the
AMOUNT FINANCED in this transaction, which is ................................... $ ___38,658.38___

5. The ANNUAL PERCENTAGE RATE on this transaction is 11.33%.

6. Itemized CHARGES EXCLUDABLE from the FINANCE CHARGE in this transaction:

(a) Appraisal fee _____ $ ___POC___    (g) Documentary stamps on note _____ $ ___-0-___

(b) Title insurance _____ $ ___105.00___    (h) Intangible tax on mortgage _____ $ ___120.00___

(c) Survey _____ $ ___75.00___    (i) Recording fees _____ $ ___20.00___

(d) Credit report _____ $ ___POC___    (j) Inspection fees/ Amor. Sch. _____ $ ___33.00___

(e) Initial escrow deposit _____ $ ___405.46___    (k) Assign Fee/Tax Svc.Fee $ ___22.50___

(f) Hazard insurance premium ___ $ ___196.00___    (l) Fed.Exp./Atty.Fees _____ $ ___348.50___.

7. 'Payments of Principal and Finance Charge exclusive of Mortgage Insurance Premium on this transaction shall number ___360___ with the first such payments due on the ___1st___ day of ___August, 1979___ and all subsequent payments due the 1st day of each month thereafter, and such payments shall be in the amount of $ ___373.60___. In addition, all payments will include additional amounts for mortgage insurance premiums. These additional amounts will range from $ ___8.28___ in the first payment due ___August 1, 1979___ to $ ___.88___ in the payment due ___July 1, 2009___ which is the last payment due. The total of payments is $ ___136,636.80___ (Plus escrow payments for taxes and hazard insurance, if required).
507 Magnolia Drive

8. This Institution's security interest in this transaction is a first lien on property located at ___Woodstock, Georgia___ also specifically described in document furnished for this loan. The documents executed in connection with this transaction stand as security for future advances, the terms for which are described in the documents.

9. Late payment formula in accordance with Section 226.8 (b) (4) for payments more than 15 days in arrears:

     [X]   Conv............4% of each total late payment.

     [ ]   VA.............4% of each total late payment.

     [ ]   FHA............4% of each total late payment.

UPON DEFAULT, THE MORTGAGE NOTE MAY BE ACCELERATED AND THE ENTIRE PRINCIPAL AND INTEREST DUE THEREUNDER SHALL BECOME IMMEDIATELY DUE AND PAYABLE.

10. Prepayment formula, if any, in accordance with Section 226.8 (b) (6):
FHA - None    VA - None    Conventional - If, within five years from the date of the mortgage note, any prepayment is made in any 12-month period beginning with the date of the mortgage note or anniversary dates thereof ("loan year") with money lent to the borrower by a lender other than the holder of the mortgage note, then the borrower shall pay to the holder of the mortgage note (a) during each of the first three loan years 5.37% of the amount by which the sum of prepayments made in any such loan year exceeds 20% of the original principal amount of the mortgage note, and (b) during the fourth and fifth loan years 3.0% of the amount by which the sum of prepayments made in any such loan year exceeds 20% of the original principal amount of the mortgage note.

11. Rebate formula, if any, in accordance with Section 226.8 (b) (7). NONE

12. Miscellaneous disclosures, or explanations:
ON CONVENTIONAL LOANS The mortgage provides, in part, that if the mortgaged property is transferred without lender's written consent, the mortgage may be accelerated and all sums secured thereby may be declared due and payable UNLESS, at lender's option, the transferee's credit is acceptable to lender, the interest rate of the note is increased, and an assumption fee is paid.

## INSURANCE

13. PROPERTY INSURANCE is required as a condition of this loan, but may be obtained by borrower through any person of his choice, reasonably acceptable to lender.
FLOOD INSURANCE is [ ]   is not [X]   required as a condition of this loan.

14. MORTGAGE PROTECTION LIFE INSURANCE and DISABILITY INSURANCE are not required to obtain this loan. No charge is made for credit insurance and no credit insurance is provided unless the borrower gives specific dated and separately signed affirmative indication of the desire to carry such insurance.

FREEDOM MORTGAGE                     I hereby acknowledge receipt of a copy of this Disclosure Statement.

BY: _____               _____
                                      Norman A. Sage    Customer

Dated: ___June 26, 1979___               _____
                                              Customer

                                       Dated: ___June 26, 1979___

17

*The Financial Disclosure Statement
Mandated by Congress*

Credit Available for Actual Use of Borrower

To the seller of the house,
or to the holder of an
existing first mortgage
and the seller as the
case may be                                    $37,332.92

All charges, itemized,
included in the amount of
credit extended but which
are not part of finance
charge[1]

| | |
|---|---|
| Initial Escrow Deposit | $405.46 |
| Inspection Fees/ | |
| Amor. Sch. | 33.00 |
| Assign Fee/ | |
| Tax Svc. Fee | 22.50 |
| Fed. Exp./Atty Fees | 348.50 |
| Clear Title Ins. Co. | 105.00 |
| Accurate Surveyors | 75.00 |
| Good Hands Ins. Co. | 196.00 |
| Ga. Tax Collector— | |
| Intangible Taxes | 120.00 |
| Clerk of Superior Ct.— | |
| Recording | 20.00 |
| | $ 1,325.46 |
| Total | $38,658.38 |

Referring first to the statute, section 1639(a), one notes that paragraph (1) of the statute *requires* disclosure of the amount of credit of which the obligor will have the actual use: the amount "which is or will be paid to him or for his account or to another person on his behalf." Paragraph (a)(3) of the statute requires that the total of the figures in paragraphs (a)(1) and (2) must add up to the amount financed, which in this case is $38,658.38. The Board regulation has lumped the amount of credit available to the borrower with all charges which are included in the amount of credit but which are not part of the finance charge. The phrase "all charges" means a lender's legitimate charges for costs necessary to make the loan, but excepted from the finance charge by 15 U.S.C. sec. 1605(b)-(e). (*See* note 1).

The financial disclosure statement furnished by Freedom conforms with neither the statute nor the regulation because it does not reflect what sum of money the borrower received as the result of the transaction, in this case $37,332.92 (the circled amount in "The Financial Disclosure Statement Mandated by Congress"). The regulation, although having no separate breakdown as required by the statute, can be construed to require that the borrower be informed of the net amount to be paid to him or in his behalf to another and that all the items add up to the amount financed. With the Freedom Mortgage form, the borrower must make calculations in order to determine the exact amount of money by which he is benefited as a result of the loan transaction.

The majority misunderstands the purpose behind the Board's modification of the congressional statute.[2] The Board determined

---

1. 12 C.F.R. sec. 226.4(e) (1979) is applicable here since this is a real estate loan. It provides:

    (e) *Excludable charges, real property transactions.* The following charges in connection with any real property transaction, provided they are bona fide, reasonable in amount, and not for the purpose of circumvention or evasion of this part, shall not be included in the finance charge with respect to that transaction:

    (1) Fees or premiums for title examination, abstract of title, title insurance, or similar purposes and for required related property surveys.

    (2) Fees for preparation of deeds, settlement statements, or other documents.

    (3) Amounts required to be placed or paid into an escrow or trustee account for future payments of taxes, insurance, and water, sewer, and land rents.

    (4) Fees for notarizing deeds and other documents.

    (5) Appraisal fees.

    (6) Credit reports.

2. The confusion in the regulation, which has required the Board to issue interpretative letters trying to explain its meaning, stems from the phrase "including all charges, individually itemized, which are included in the amount of credit extended." This phrase is subject to two interpretations. The word "including" may be read to mean that the individualized charges are components of the "amount of credit," the latter being the subject of the clause. If that is so, the phrase "amount of credit" is synonymous with the phrase "amount financed." I do not give this interpretation to the regulation because common sense requires attributing a separate identity to the phrase "amount of credit," in this case $37,332.92 (the circled amount). I read the regulation as meaning that

that lenders and borrowers would be confused by "all charges" made pursuant to paragraph (a)(2) of the statute and payments under paragraph (a)(1) for the account of the borrower or to another person on his behalf. In the amicus brief filed in this case, counsel points to an example of property or credit insurance which could be said to be paid to another for the benefit of the borrower under paragraph (a)(1) or which could be an item classified as "all charges" under paragraph (a)(2). Thus, the Board, in its regulations, prescribed that the lender could itemize all expenditures made by the lender which when added to the amount of money furnished the borrower (the circled amount) equals the "amount financed." In order to reach a total that equals the "amount financed," all of the sums must be itemized, and amongst the items listed must be included the amount of money furnished the borrower (the circled amount). The majority excuses the lender in this case, and all lenders in the three states covered by this circuit, from being obligated to inform a borrower of the amount of money which he is receiving. In this case, the majority fails to require disclosure of the sum of $37,332.92 (the circled amount).

the "amount of credit" (the circled amount) is one of the components of the all-inclusive figure of the "amount financed." Under this interpretation, the regulation as written accords with the statute. As interpreted by the Board, however, and as followed by Freedom Mortgage in this case, the regulation does not require explicit disclosure of the "amount of credit" (the circled amount).

The alternate interpretation is that the regulation equates "amount of credit" with "amount financed" and defines it as the sum of (1) the net proceeds to the borrower (the circled amount) and (2) the itemized charges. Under this interpretation, the regulation does not, as written, comport with the statute. This is the interpretation followed in *Pridegon v. Gates Credit Union,* 683 F.2d 182 (7th Cir. 1982), where the court stated that the regulation, sec. 226.8(d)(1), "only requires the disclosure listed in sections 1639(a)(2) and (3)" of the statute. 683 F.2d at 191. Under this interpretation, the Freedom Mortgage statement comports with the regulation.

The seminal case on this subject is *Pollock v. General Finance Corp.,* 535 F.2d 295 (5th Cir.1976), *cert. denied,* 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977). In speaking of the relationship between the statute and the regulation, the court said:

These three subsections of sec. 1639(a) clearly require the disclosure of three different items. A creditor must disclose (1) the amount of cash given to the debtor or given on the debtor's behalf, (2) the charges, individually itemized, and (3) the total of the above two amounts. As the disclosure statement makes apparent, General Finance satisfied only the last two subsections of sec. 1639(a). The statement also informed the debtor that the total amount financed was $171.36. However, the statement failed to disclose that the amount of the loan was $155.28. Although the debtor could have determined the amount of the loan by the simple arithmetic procedure of subtracting the total insurance charges from the total amount financed, we determine that the statute does not require a consumer to perform this function, and that the creditor's failure to disclose the required item violated sec. 1639(a)(1).

535 F.2d at 298–99 (footnote omitted). *Pollock* has been followed in a number of other cases.[3]

The choice between these two alternate interpretations, though confusing, is not crucial to my opinion in this case. Under either reading of the regulation, we are left with the fundamental problem: lenders are not being required to inform borrowers of the amount of credit of which they will have the actual use, as mandated by the statute.

**3.** *See, e.g., Barbieri v. Commercial Credit Loans, Inc.,* 596 F.2d 660 (5th Cir.1979), where the court said:

If we had held to the contrary, permitting a creditor to disclose only the total amount financed and the itemized finance charges, we would have by judicial fiat written out of the statute the express provision of section 1639(a)(1) requiring disclosure of the amount of credit made available to the debtor (*i.e.,* the total amount financed less the itemized finance charges). If Congress had intended the debtor rather than the creditor to perform the task of subtraction, it would not have included section 1639(a)(1) in the statute. In this case, however, although we allow the debtor to be burdened with a simple

The majority opinion holds that it is unnecessary for a lender to disclose the net loan proceeds as required by 15 U.S.C. sec. 1639(a)(1) and as conceptually required by the Board regulation found in 12 C.F.R. sec. 226.8(d)(1). The majority makes this giant step of obliterating the congressional mandate and the Board duly adopted regulation by saying "[t]he board has construed its regulation to the contrary in its staff interpretation," citing certain staff opinion letters. at pp. 1520–1521 and n. 5). Without being explicit, the majority holds that the Board can rewrite the statute by issuing regulations, and then if the regulations are not clear, (see note 2), the Board can issue interpretative letters that eliminate the clear intent of Congress set out in the statute. As legal support the majority cites *Smathers v. Fulton Federal Savings and Loan Association*, 653 F.2d 977 (5th Cir.1981), where the court had under consideration "the question whether the disclosure statement should have used the word 'will' instead of 'may' as to the security interest in after-acquired property . . . ." 563 F.2d at 979. In holding for the lender in that case, the court stated that use of the word "will" was not essential and that the word "may" was permissible, particularly in light of a Federal Reserve Board letter so interpreting a Board regulation. The majority next states: "The *Smathers* court concluded that although we previously had given deference to Federal Reserve staff opinions, *Milhollin* required that weight of a much different quality be given," and concludes:

> Under *Milhollin* the only question before us is whether the board's discharge of its broad authority under 15 U.S.C. sec. 1604 was demonstrably irrational when it provided that disclosures under subsections of 1639(a) be combined. We conclude that we cannot make a determination of demonstrable irrationality. We therefore hold that the pertinent provision of Regulation Z is valid and must be given effect and that the conflicting net loan proceeds

arithmetic calculation, we do not ignore section 1639(a)(1). Instead, we speak to the form of the disclosure required by that sec-

disclosure requirement of *Pollock* cannot stand.

(at pp. 1521–1522).

The majority reads *Ford Motor Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), too broadly to reach its conclusion that the Federal Reserve Board can modify a statute of Congress and then issue interpretive orders construing its own regulations in a manner that vitiates the congressional act. The language of *Milhollin* must be considered in the light of the facts of that case and the reasoning of the Court. In *Milhollin,* the Supreme Court had under consideration a claim by the borrower:

> that acceleration clauses were comprehended by the general statutory prescription that a creditor shall disclose "default, delinquency, or similar charges payable in the event of late payments," 15 U.S.C. sections 1638(a)(9), 1639(a)(7), and were included within the provision of Regulation Z requiring disclosure of the "amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments," 12 CFR sec. 226.8(b)(4) (1979).

444 U.S. at 559, 100 S.Ct. at 794, 63 L.Ed.2d at 27. The Supreme Court reached the reasonable conclusion that "[a]n acceleration clause cannot be equated with a 'default, delinquency, or similar charg[e],' subject to disclosure under 15 U.S.C. sections 1638(a)(9), 1639(a)(7), and 12 CFR sec. 226.8(b)(4)." In *Milhollin,* the Court reasoned:

> [W]e conclude that the issue of acceleration disclosure is not governed by clear expression in the statute or regulation, and that it is appropriate to defer to the Federal Reserve Board and staff in determining what resolution of that issue is implied by the truth-in-lending enactments.

444 U.S. at 560, 100 S.Ct. at 794, 63 L.Ed.2d at 28. The statute under consideration in this case does give clear expression by requiring disclosure to the borrower of "the

tion and conclude that the disclosure made in this case is satisfactory.
596 F.2d at 662.

amount of credit of which the obligor will have the actual use."

Congress was not silent with respect to the requirement that a lender inform a borrower of the sum of money being loaned. Because Congress mandated the full disclosure of the amount of credit of which the borrower would have the actual use, I dissent.