Arthur **QUILLER, Lillie Mae Quiller, and all other persons similarly situated,** Plaintiffs-Appellants,

v.

**BARCLAYS AMERICAN/CREDIT, INC.,** Defendant-Appellee.

No. 83–8455.

United States Court of Appeals, Eleventh Circuit.

March 19, 1984.

Opinion on Granting of Rehearing En Banc May 22, 1984.

John B. Long, Jay M. Sawilowsky, Augusta, Ga., for plaintiffs-appellants.

Douglas N. Campbell, Elise M. Bloom, Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

To finance their purchase of a new mobile home, plaintiff-appellants entered into a retail installment sales contract, which the mobile home dealer then assigned to the defendant-appellee credit corporation, Barclays American/Credit, Inc. The Quillers' agreement obligated them to pay finance charges exceeding a thirteen percent add-on rate, in apparent violation of the Georgia Motor Vehicle Sales Finance Act, O.C.G.A. §§ 10–1–30 to –38 (Michie 1982), which limits the finance charge on sales of new mobile homes to a ten percent add-on. Alleging a violation of the Georgia Code, plaintiffs filed a class action against Barclays in the Superior Court of Richmond County, Georgia, seeking class certification, a declaratory judgment barring the defendant from collecting any finance charges from the named plaintiffs and all other persons similarly situated, and damages in an amount double the time-price differen-

tial for wilful violation of the Georgia act. Barclays then removed the case to the United States District Court for the Southern District of Georgia.

The applicability of state usury laws, however, has been greatly curtailed by federal legislation. Financing agreements that satisfy the requirements of the Depository Institutions Deregulation and Monetary Control Act, Pub.L. No. 96–221, Title V, § 501, 94 Stat. 161 (1980) (codified at 12 U.S.C. § 1735f–7 note) (the "Act"), are exempt from state law interest ceilings. The Quillers' complaint alleged that their contract was not insulated from the ceiling imposed by the Georgia statute because the agreement did not comply with the prerequisites for preemption under federal law. Specifically, they charged that their contract did not contain a provision requiring the lender to notify the debtor thirty days prior to instituting any action leading to repossession or foreclosure, thus violating the Act and one of the regulations promulgated thereunder, 12 C.F.R. § 590.4(h) (1983). Attached to the complaint was a copy of the installment sales contract.

Barclays moved to dismiss for failure to state a claim, contending that the cause of action was barred as a matter of law by the Act and the statute of limitations. Pretermitting the statute of limitations question, the district court dismissed the action as precluded by the federal statute. We disagree and reverse the order dismissing the Quillers' claim.

Our threshold inquiry is whether the district court's dismissal was procedurally premature. The Quillers' contract states a claim for relief under Georgia law—the charging of a usurious interest rate, which, if proved, would entitle them to relief for violation of the Georgia Motor Vehicle Sales Finance Act. Barclays' Rule 12(b)(6) motion alleges the affirmative defense of federal preemption of the Georgia statute. Generally, the existence of an affirmative defense will not support a motion to dismiss. Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint. *See, e.g., Concordia v. Bendekovic,* 693 F.2d 1073 (11th Cir.1982) (party may raise affirmative defense of res judicata by 12(b)(6) motion when defense's existence may be judged on face of complaint); *Mann v. Adams Realty Co.,* 556 F.2d 288, 293 n. 6 (5th Cir.1977) (defense of statute of limitations may appear on face of complaint); *see generally* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 (1969). The claim may be adequately stated, as it is here, but in addition to the claim the complaint may include matters of avoidance that preclude the pleader's ability to recover. When this occurs, the complaint has a built-in defense and is essentially self-defeating. "[T]he problem is not that plaintiff merely has anticipated and tried to negate a defense he believes his opponent will attempt to use against him; rather plaintiff's own allegations show that the defense exists." *Id.* Although the Quillers' complaint would not be vulnerable to dismissal simply because they anticipated and attempted to negate the defense of federal preemption, if the complaint itself demonstrates that the Act governs the contract, a Rule 12(b)(6) dismissal would be proper.

Because the Quillers attached the installment sales contract to their pleadings, the district court properly examined the document to determine whether the defense of federal preemption was apparent on the face of the complaint. If the contract and complaint demonstrate that Georgia law does not apply because the agreement is governed by the Act, the action should be dismissed because it would appear beyond doubt that the Quillers could prove no set of facts in support of their claim. The district court therefore was procedurally correct in looking at the contract to determine whether it complied with the requirements of the federal statute.

Turning to the substance of the motion to dismiss, we first observe that the Act preempts state law limits on finance

charges for sales of residential manufactured homes only if the financing arrangement complies with certain consumer protection regulations. Section 501(c) of the Act provides that the statute

> *shall not apply* to a loan, mortgage, credit sale, or advance which is secured by a first lien on a residential manufactured home *unless the terms and conditions relating to such loan,* mortgage, credit sale, or advance *comply with consumer protection provisions* specified in regulations prescribed by the Federal Home Loan Bank Board. *Such regulations shall—*
>
> . . . .
>
> (2) *require a 30-day notice* prior to instituting any action leading to repossession or foreclosure . . . .
>
> . . . .
>
> and (4) include such other provisions as the Federal Home Loan Bank Board may prescribe after a finding that additional protections are required.

Pub.L. No. 96–221, Title V, § 501(c) (emphasis added).

The regulation implementing subsection (c)(2) states:

> *[N]o action to repossess or foreclose, or to accelerate payment* of the entire outstanding balance of the obligation, *may be taken* against the debtor *until 30 days after the creditor sends the debtor a notice of default* . . . .

12 C.F.R. § 590.4(h) (1983) (emphasis added). The Quillers alleged in their complaint and maintain on appeal that the statute and regulation require the financing agreement to include a provision guaranteeing the debtor thirty days notice before repossession or foreclosure. Since their agreement contains no such clause, they contend that the contract is not protected under the preemption statute and thus is governed by Georgia law.[1]

■ We reject the Quillers' interpretation of the statute and regulation. Neither requires that a thirty-day notice provision appear in the contract. The plain language of the regulation prohibits only the *act of* foreclosure or repossession without giving notice. The words "no action . . . may be taken" regulate the conduct of creditors attempting to exercise their rights upon default, not the written financing agreements themselves. When subsection 590.-4(h) is read in conjunction with other regulations implementing the Act, it becomes clear that the Federal Home Loan Bank Board (the "Board") did not intend to require that the debtor's right to thirty days notice be recited in the contract. Subsections 590.4(d) (prepayment without penalty),[2] (e) (terms of balloon payments),[3] (f) (late charges),[4] and (g) (agreement for deferral of fees)[5] all contain express, unambiguous statements requiring specific rights of the debtor to be delineated in the written agreement. Subsection (h) contains no similar requirement. If an express contractual notice provision had been intended, the Board would have so provided in unambiguous terms.

---

1. On appeal the Quillers have argued additional reasons why their contract fails to qualify for protection under the Act. Since we decide *infra* that Barclays is not entitled to the benefits of federal preemption because the contract contravened the federal notice requirements, we need not decide the validity of the Quillers' other arguments.

2. 12 C.F.R. § 590.4(d) provides: *"Prepayment penalties.* . . . The right to prepay shall be disclosed in the loan contract in type larger than that used for the body of the document."

3. 12 C.F.R. § 590.4(e) provides: *"Balloon Payments.* (1) No creditor may enter into an agreement with a debtor which requires or anticipates a schedule of payments under which any one payment is more than twice the amount of an otherwise regularly scheduled payment. . . . (3) The parties may agree in writing to payments that are not substantially equal or that are paid at unequal intervals. . . ."

4. 12 C.F.R. § 590.4(f) provides: *"Late Charges.* (1) No late charge may be assessed, imposed, or collected unless provided by written contract between the creditor and debtor. . . ."

5. 12 C.F.R. § 590.4(g) provides: *"Deferral Fees.* (1) With respect to mobile home transactions containing precomputed finance charges, agreements providing for deferral of all or part of one or more installments shall be in writing, signed by the parties, and (i) Provide . . . ."

Nor does the statute itself require a contractual notice provision. It states only that a loan does not qualify for federal protection unless the terms and conditions relating to such a loan comply with the consumer protection regulations of the Board. Rather than regulating the specific terms of financing agreements, the statute delegates this authority to the Board. Although subsection (c)(2) does direct the Board to promulgate a thirty-day notice regulation, the statute does not demand that the regulation require the notice provision to appear in the contract. The Act merely requires the agreement to comply with the regulations, which do not themselves require an express notice provision.

Our construction of regulation 590.4(h) and the statute is consistent with the Board's own interpretation. An opinion letter of the Board's general counsel concludes, "This requirement [§ 590.4(h)] refers only to the act of giving notice; neither paragraph (h) nor the Congressional legislation that it implements . . . expressly requires that a covered credit agreement recite the purchaser-borrower's right to notice." 5 Fed.Banking L.Rep. ¶ 83,027 (1983). In an amicus brief filed by the Board in this case, the agency has embraced the conclusion of its general counsel. Since the agency's view of its own regulation and the statute it oversees is not "demonstrably irrational," we should give great weight to its interpretation. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); *see also Sage v. Freedom Mortgage Co.*, 704 F.2d 1519, 1521 (11th Cir.1983) (en banc). We therefore hold that to qualify for federal preemption under the Act the financing agreement need not contain an express term guaranteeing the debtor thirty days notice before repossession or foreclosure.

■ Although federal law does not mandate a contractual notice provision, the creditor cannot obtain the benefits of preemption if the financing agreement contains express provisions authorizing conduct *contrary* to the statute or regulations. While there is no affirmative duty to disclose to the debtor his statutory right to notice before repossession or foreclosure, if the contract permits the creditor to repossess or foreclose immediately upon default, the "terms and conditions" relating to the loan agreement do not comply with regulation § 590.4(h) and the creditor cannot claim the benefits of federal preemption.

In determining whether the terms and conditions of this agreement comply with the Board's consumer protection regulations, we should keep in mind that Congress included manufactured home financing in its preemption scheme only on the condition that consumer-debtors would be guaranteed certain safeguards. *See* H.Conf.Rep. No. 96–842, 96th Cong., 2d Sess. 79, *reprinted in* 1980 U.S.Code Cong. & Ad.News 298, 309. Because purchasers of mobile homes frequently are unaware of complicated rules of contract construction, we should examine the contract through the eyes of the typical consumer and determine whether the lender could use the terms of the contract to impose illegal burdens on a debtor with no knowledge of his statutory rights. It would be unrealistic to assume that every illegal act will be corrected through litigation. *See General Finance Corp. of Georgia v. Sprouse*, 577 F.2d 989 (5th Cir.1978) (when interpreting contracts in light of consumer legislation, court should consider actual operation of contract in commercial world, effect upon consumer not familiar with legal rights, and risk that contract might allow lender to employ ambiguous provisions to his advantage). The rule of construction that ambiguities and inconsistencies should be resolved against the drafter, *Landale Enterprises, Inc. v. Berry*, 676 F.2d 506 (11th Cir.1982), is particularly appropriate in the areas protected by consumer legislation.

The Quiller contract provides in part: If Customer defaults on any obligation under this contract, or if Holder shall consider the indebtedness or the Collateral insecure, *the full balance may, upon election of Holder, without notice, subject to any notice of right to cure, become due and payable,* less the required

rebate of the Finance Charge .... Customer agrees in any such case to pay said amount or, at Holder's election, to deliver the Collateral to Holder, and Holder may, *without notice or demand for performance or legal process*, peaceably enter any premises, but not into any dwelling, where the Collateral may be found, peaceably take possession of it and custody of anything found in it.

■ The agreement includes language that, on its face, is contrary to the requirements of the statute and regulations. It permits the creditor (1) to foreclose on the loan "without notice;" (2) to repossess "without notice or demand for performance or legal process;" and (3) to demand payment of the full balance upon the debtor's default or the creditor's insecurity "without notice." These provisions are inaccurate statements of the creditor's rights under federal law. The only language that might apprise the debtor of his statutory right to notice is the vague qualification that the creditor's express, contractual powers to immediately foreclose, repossess and accelerate are "subject to any notice of right to cure." Unless the debtor has acquired knowledge of his statutory right to cure from some outside source, however, this language will not accurately notify him of his contractual rights. The qualification would, at most, inform the debtor that he *may* have a right to cure, but the law guarantees him an *absolute* right to cure. This inconsistent language goes further than simply remaining silent on the debtor's right to notice upon default; by declaring the creditor's unauthorized power to foreclose immediately, the consumer is given an affirmative misrepresentation as to his statutory guarantees.

Barclays contends that its contract does comply with the regulations because § 590.4(h) cannot be violated until the creditor actually forecloses, repossesses or accelerates payment without giving thirty days notice. The argument misconstrues the language of the Act and the policies behind it. The statute and regulations allow a creditor to draft a contract that does not expressly grant the debtor a right to thirty days notice. But when the contract affirmatively allows the creditor to foreclose, repossess or accelerate payment immediately upon default, subject to an undefined, potential right to cure, the "terms and conditions" relating to the loan agree-

ment do not comply with the regulations or the statute. By authorizing immediate action upon default, Barclays has introduced a contract term that violates the Act. It may not claim the benefits of the federal law while at the same time failing to provide the consumer protections that are the price for those benefits. We therefore hold that the Quiller contract does not qualify for protection under the preemption statute. The district court's grant of defendant's motion to dismiss on this ground is REVERSED, and we REMAND for further proceedings.

RONEY, Circuit Judge, dissenting:

I respectfully dissent from the Court's holding that the Quiller contract does not qualify for protection under the Federal Preemption Statute. I agree with the Court that the thirty-day notice provision is not required to be in the contract. I cannot agree that the remedy applied here is suitable because of the language in the contract concerning the notice requirement.

When the contract is obviously drawn and intended by all parties to permit them to take advantage of the Federal Preemption Statute, it is unduly harsh to throw the whole contract out just because it contains language which appears to violate the thirty-day notice requirement. Rather than applying state usery laws to a contract which could not have been validly made thereunder, it would be more equitable to simply invalidate this contract clause to the extent it violates the consumer regulations, and enjoin enforcement if that remedy is deemed necessary to protect the consumer.

This result would further the twin aims of the Federal Preemption Act, assuring the availability of consumer credit for the purchase of manufactured housing and according protection to consumer borrowers, without interfering so unnecessarily with a carefully conceived financing program established to meet the needs of both parties in a time of rising money cost.

ON PETITION FOR REHEARING AND
PETITION FOR REHEARING
EN BANC

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

BY THE COURT:

A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in this Court in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Court en banc *with* oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of en banc briefs.