Arthur QUILLER, Lillie Mae Quiller,
and all other persons similarly
situated, Plaintiffs-Appellants,

v.

BARCLAYS AMERICAN/CREDIT,
INC., Defendant-Appellee.

No. 83–8455.

United States Court of Appeals,
Eleventh Circuit.

July 8, 1985.

John B. Long, Jay M. Sawilowsky, Augusta, Ga., for plaintiffs-appellants.

Douglas N. Campbell, Elise M. Bloom, Richard R. Cheatham, Thomas C. Shelton, Atlanta, Ga., for defendant-appellee.

James A. Brodsky, Washington, D.C., for amicus: Coord. Council on Manuf. Housing Finance.

Frank Max Salinger, Washington, D.C., for American Financial Services.

Paul E. Kauffman, Columbus, Ga., for amicus: Bertha M. Watkins, et al.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, and ANDERSON, Circuit Judges.*

PER CURIAM:

Arthur and Lillie Mae Quiller filed a class action against Barclays American/Credit, Inc., in the Superior Court of Richmond County, Georgia, alleging a violation of the Georgia Motor Vehicle Sales Finance Act, O.C.G.A. §§ 10–1–30 to –38 (Michie 1982). After removing the case to the United States District Court for the Southern District of Georgia, Barclays moved to dismiss for failure to state a claim, contending *inter alia* that the action was precluded by the Depository Institutions Deregulation and Monetary Control Act, Pub.L. No. 96–221, Title V, § 501, 94 Stat. 161 (1980) (codified at 12 U.S.C. § 1735f–7 note). The district court granted

Barclays' motion to dismiss, but a panel of this court reversed the order of dismissal and remanded the case for further proceedings. *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067 (11th Cir. 1984).

On rehearing *en banc*, we agree with the panel's disposition of the case. We therefore affirm and reinstate the panel opinion. The district court's order granting Barclays' motion to dismiss is REVERSED, and the case is REMANDED for further proceedings.

RONEY, Circuit Judge, dissenting, with whom TJOFLAT, JAMES C. HILL, FAY and R. LANIER ANDERSON, III, Circuit Judges, join:

The Court holds *first* that the contract is expressly contrary to the federal statute and regulations comprising the federal preemption scheme because it permits the creditor to foreclose, repossess, or accelerate upon the debtor's default "without notice" and *second*, that the plaintiff is entitled to the remedies available under Georgia usury law. I dissent from both of these decisions. Although not a model of clarity, the contract is not necessarily contrary to the federal scheme. The provisions of the contract are at worst ambiguous. Being ambiguous, the contract cannot be held invalid on a motion to dismiss. To the extent the contract is contrary to the conditions required by federal preemption law, there are more suitable remedies that the district court should consider before giving the plaintiff the state usury remedies.

I

As to the provisions of the contract, there are substantial arguments that the contract does not violate the law at all. As noted by the Federal Home Loan Bank Board (FHLBB) in its amicus curiae brief, both the preemption Act and the agency regulations provide circumstances in which the creditor may repossess, accelerate, or foreclose "without notice." The Act di-

---

* Judge Thomas A. Clark, recused himself and did not participate in this decision.

rects FHLBB to issue a regulation that requires

> a 30-day notice prior to instituting any action leading to repossession or foreclosure (except in the case of abandonment or other extreme circumstances).

Pub.L. No. 96–221, Title V, § 501(c)(2), 94 Stat. 161 (1980) (codified at 12 U.S.C.A. § 1735f–7 note). The implementing regulations provide:

> Except in the case of abandonment or other extreme circumstances, no action to repossess or foreclose, or to accelerate payment of the entire outstanding balance of the obligation, may be taken against the debtor until 30 days after the creditor sends the debtor a notice of default in the form set forth in paragraph (h)(2) of this section.... The debtor is not entitled to notice of default more than twice in any one-year period.

12 C.F.R. § 590.4(h)(1). Thus, in three separate situations a creditor may in fact accelerate, repossess, or foreclose without giving the 30-day notice otherwise required under section 590.4(h): (1) abandonment; (2) other extreme circumstances; and (3) upon the debtor's third default in a one-year period. Consequently, the contract's assertion that creditor may take action "without notice" upon debtor's default is not, as the court suggests, an "affirmative misrepresentation as to [the debtor's] statutory guarantees." 727 F.2d at 1072.

In all other default situations, the creditor is required to give the 30-day notice. The contract provides that the creditor's express powers to foreclose, accelerate, or repossess are "subject to any notice of right to cure." The court notes that "[t]he qualification would, at most, inform the debtor that he *may* have a right to cure, but the law guarantees him an *absolute* right to cure." 727 F.2d at 1072 (emphasis in original). As pointed out above, however, the right to cure is not "absolute" in at least three specified circumstances. Given that the court concedes that the qualifying clause informs the debtor that he *may* have a right to cure, that is all that is necessary. For the court to hold that the creditor had to use language more specific than "subject to any notice of right to

cure" undercuts the court's holding that "to qualify for federal preemption under the Act the financing agreement need not contain an express term guaranteeing the debtor thirty days notice before repossession or foreclosure." 727 F.2d at 1071.

It would be inconsistent with federal law for a preemption contract to claim an unqualified right to acceleration, repossess, or foreclosure "without notice." But because in some situations a creditor may indeed exercise such powers without notice, it is not inconsistent with federal law for a preemption contract to claim such a right "subject to any notice of right to cure," the express qualification contained in the Quiller contract. The contract language therefore does not prevent the loan from meeting the "terms and conditions" of the federal statute and regulations.

## II

At most the contract would be ambiguous. With that determination, the court should remand for the district court to determine the intent of the parties. The contract was written to be a federal preemption contract. The words "FEDERAL PREEMPTION CONTRACT" appear in the contract in the bottom left corner of the very same page as the language held to be contrary to the federal preemption scheme. The conduct of the parties, the intention to make the agreement a federal preemption contract, and the intent of the borrower to make a legal contract and to pay the higher interest rate become relevant.

In holding that the agreement is contrary to the statute and regulations, the court characterizes the offending provisions as "inaccurate statements of the creditor's rights under federal law." *Id.* at 1072. Be that as it may, the contract does contain the "vague qualification" that its claimed powers to immediately foreclose, repossess, and accelerate are "subject to any notice of right to cure." The court acknowledges that "[t]he qualification would, at most, inform the debtor that he *may* have a right to cure." *Id.* at 1072 (emphasis in original). In view of the ambiguity created by this

"inconsistent language," this case should be remanded to the district court to conduct an evidentiary hearing, if necessary, to determine whether the parties intended to enter a federal preemption contract, and, if so, what was intended by the ambiguous language.

This is not to say, however, that the creditor could receive the benefits of federal preemption were it in fact to exercise its powers upon a debtor's default in a manner inconsistent with the federal statute and regulations. Nor would contract language that, unlike the language in the contract here, was indeed contrary to the consumer protections provided by the Act and regulations be saved by a creditor's actual compliance with the Act and regulations. The case before us, however, on appeal from the district court's order granting defendant's motion to dismiss, presents neither of those situations.

## III

Once the "terms and conditions" are established, then the relief a party is entitled to obtain in court is to have the contract enforced according to those "terms and conditions." For a class, this may either be a declaratory decree or an injunction requiring the creditor to follow the contract's "terms and conditions."

In any event, the problem with notice might be easily curable by remedies not as harsh as that held by the court. At most, the case should be remanded to the district court to consider remedies that would preserve the bargain the parties intended to make. There is no question but that the parties intended to contract for a legal interest rate under the federal preemption law. The Georgia law of usury under O.G.C.A. § 10–1–33 makes the civil penalties of the Georgia Motor Vehicle Sales Finance Act applicable:

> A violation of Code Section 10–1–33 by the seller or holder shall bar recovery of any finance charge, delinquency, or collection charge on the contract.

O.C.G.A. § 10–1–38(b). Asserting that the violation was wilful, the Quillers seek to recover double the time price differential under O.C.G.A. § 10–1–38(c). The penalty provisions do not authorize forfeiture of the unpaid principal of loans held violative of section 10–1–33. *See Bozeman v. Tifton Federal Savings & Loan Ass'n,* 164 Ga. App. 260, 297 S.E.2d 49 (1982); *Kelly v. Sylvan Motors, Inc.,* 160 Ga.App. 420, 287 S.E.2d 359, 360 (1981); *Ford Motor Credit Co. v. Spann,* 153 Ga.App. 535, 265 S.E.2d 863, 865 (1980); *Cook v. First National Bank,* 130 Ga.App. 587, 203 S.E.2d 870, 871 (1974); *see also Barrett v. Vernie Jones Ford, Inc.,* 395 F.Supp. 904, 909 (N.D.Ga. 1975), *aff'd,* 578 F.2d 1185 (5th Cir.1978). Georgia law indicates that the lender may recover this principal through the borrower's continued payments under the contract, unless the borrower was still in default after adjustment had been made to account for the forfeiture of the finance charge. *See Spann,* 265 S.E.2d at 865; *Bozeman,* 297 S.E.2d at 52. Nevertheless, the penalty sought by the Quillers would be harsh in a case where both parties intended to enter into a federal preemption contract governed by federal preemption law, under which the finance charge charged by Barclays/American and agreed to by the Quillers was legal.

Rather than applying state usury laws to require forfeiture of the finance charge, a more equitable remedy might be to invalidate the provisions contrary to federal law and enjoin enforcement of such provisions if necessary to protect the consumer. Such an approach was taken by this Court in a case where a provision of a loan contract violated regulations promulgated under the Georgia Industrial Loan Act. *Robinson v. Central Loan and Finance Corp.,* 609 F.2d 170, 175 (5th Cir.1980). Severance of the objectionable provisions of the loan contract would be consistent with the "well known principle of contract law that an illegal contract provision, or one contrary to public policy, when invalidated, will be severed from the remainder of the contract if it is possible to do so without leaving the remainder of the contract meaningless." *Vineberg v. Brunswick Corp.,* 391 F.2d 184, 186 (5th Cir.1968). The provisions of the contract held to be contrary to federal

regulations certainly could be severed from the contract before us without rendering it meaningless, especially in light of the fact that the contract before us contained a severability clause providing:

> If any part of this contract is invalid, unenforceable or inconsistent with the applicable laws or regulations of the State of Seller's address herein, such part shall be deemed amended, modified or deleted to conform thereto.

The Quillers contend that *Harrison v. Goodyear Service Stores,* 137 Ga.App. 223, 223 S.E.2d 261 (1976), and *General Finance Corp. v. Sprouse,* 577 F.2d 989 (5th Cir.1978), support application of the forfeiture provisions of O.C.G.A. § 10–1–38 in this case. In those cases, however, there was no dispute that the parties intended to enter contracts governed by Georgia law. *See Harrison,* 223 S.E.2d at 263 (contract governed by Georgia Retail Installment and Home Solicitation Sales Act); *Sprouse,* 577 F.2d at 991 (parties agreed contract was governed by Georgia Industrial Loan Act). Both decisions penalized creditors for charging or contracting to charge interest rates in excess of the statutory maximum under Georgia law. In contrast, in the case before us, the creditor contracted for a finance charge that was clearly permissible under federal law if the terms and conditions of the loan contract complied with federal law. In the event the district court finds that the parties intended to enter a legal contract under federal law, *Harrison* and *Sprouse* present no obstacle to a severance and injunctive remedy that would conform the terms and conditions of the contract to federal law rather than forfeiture of the finance charge. Thus, even if the terms and conditions of the loan contract were contrary to federal law, the proper remedy would be to enjoin enforcement of those provisions absent any evidence that the creditor intended to enforce the illegal terms.

JAMES C. HILL, Circuit Judge, dissenting, with whom, FAY and R. LANIER ANDERSON, III, Circuit Judges, join:

I wholeheartedly concur with Judge Roney in his dissent, and write here only to express my fears that the court's treatment of this preemption loan agreement forecasts an excursion into hypertechnical "gamesmanship" similar to that apparent in litigation under the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*

The usury preemption act was passed in 1980 during a time of historically high interest rates, when consumers who wished to purchase premanufactured homes were unable to obtain financing because financial institutions were unwilling to lend money for their purchase at the relatively low statutory interest levels prevailing in many states. In passing the preemption act, Congress constructively undertook to ease the severity of the mortgage credit crunch and insure the availability of mortgage credit in these states. S.Rep. No. 96–368, 96th Cong., 2d Sess. 18–19 (1979), *reprinted in* 1980 U.S.Code Cong. and Ad.News 236, 254–55. Although Congress concluded that purchasers of financing for premanufactured homes were entitled to additional consumer protections in order for their mortgages to fall within the preemption act, there is no doubt that the overriding objective of the act was to assist both borrowers and lenders by freeing up additional credit for housing. This was not intended to be a consumer protection disclosure act.

The majority opinion does not further the constructive purpose of the preemption act. The court holds that a lender loses the protection of the preemption act and is subject to the forfeiture provisions of state usury laws on the basis of a contractual provision which is, at the most, merely ambiguous; even though both parties intended to enter into a federal preemption contract governed by federal law. This encourages a TILA-like game of "gotcha," where a borrower who wishes to serve as a class representative subjects the contracts to microscopic examinations to determine if it might be possible to claim damages for perceived disclosure violations in a situation where no "unwary" consumer has been misled. *See Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1385–86

(11th Cir.1984) (TILA violation) (Hill, J., dissenting).

The approach taken in the dissent authored by Judge Roney would further the purpose underlying the preemption legislation, while at the same time protecting the borrower from any violation of the federal act. A borrower can be adequately protected from actual violations of the act when and if they occur, at which time a counter-claim along the lines of the present action might be entertained. However, the sort of search for errors in draftsmanship upon which claims of violations might be predicated, encouraged by the court in this case, constitutes the court's enmity to the preemption act and a judicial attempt to defeat its purposes. Such "gamesmanship," permitted by the courts, has made what I perceive to be a mockery of the truth-in-lending laws. I hope that we do not travel down that road again in connection with this very useful law.