## 60318. CLASSIC RESTORATIONS, INC. v. BEAN.

QUILLIAN, Presiding Judge.

Classic Restorations, Inc., the plaintiff below, specializes in the restoration of vintage homes. Dixie Bean, the defendant, purchased a home in Inman Park with the intent of restoring it. On November 29, 1977, following a fire at her residence, Mr. Floyd — the sole stockholder in Classic Restorations, arrived in the same car as the insurance adjuster — Mr. Morrison. Floyd provided her with an estimate of repair which was later placed in contract form on December 7, 1977.

Defendant testified that "Mr. Morrison guaranteed [Floyd's] work, recommended him, informed me that if I used anybody else, I wouldn't get a penny over that." Mr. Morrison also told her "he would guarantee the work would be done the way I wanted it, to restore the house back to the way it was prior to the fire; that if Mr. Floyd did not perform the work and finish it, he would not be paid a penny until the work was done and done to my satisfaction." Mr. Floyd told her "[o]n November 29th, in that same conversation, he said 30 days, he could have it done in 30 days, have me back in the house by Christmas."

In April of 1978 Bean ordered Classic Restorations off the property. She was dissatisfied with the rate of progress of the work and the quality of the work that had been done. Classic Restorations brought this action for $6,914 on open account and the defendant Bean counterclaimed — alleging damages of $7,000. The jury returned a verdict of $5,200 for the defendant. The plaintiff brings this appeal. *Held:*

1. Plaintiff has objected to various questions asked of several witnesses and to the refusal of the trial court to permit certain questions of other witnesses. The scope of examination and cross-examination is not unlimited, but the scope of permissible examination lies within the sound discretion of the court (*Clark v. Board of Dental Examiners,* 240 Ga. 289, 292 (240 SE2d 250)) and curtailment of irrelevant, immaterial or repetitious inquiry by counsel is within bounds of such discretion, and an appellate court will not reverse absent abuse of discretion "unless some gross outrage to the party, and resulting damage to his cause, clearly appear. [Cits.]" *Cohen v. Saffer,* 43 Ga. App. 746 (2) (160 SE 130).

One question involved a hypothetical situation based on facts not in evidence, i.e. "if . . . you ran ten people through to look at ["a job"], you could possibly have ten different opinions about what was satisfactory or not?" No error appears here in the court's refusal to permit the question to be answered. *Wells v. Alderman,* 117 Ga. App. 724 (11) (162 SE2d 18). Plaintiff objected to defendant being

permitted to state that she planned to renovate her house. It was obvious from earlier testimony that the defendant had purchased a home in Inman Park that she planned to restore, and in dealing with the insurance adjuster had testified that "he would guarantee the work would be done the way I want it, to restore the house back to the way it was prior to the fire . . ." There was no abuse of discretion.

One objection involved an alleged inconsistent statement of the witness. Credibility of a witness is a matter for the jury (*Wilson v. Professional Ins. Corp.,* 151 Ga. App. 712, 714 (261 SE2d 450)) and alleged inconsistencies of a witness' testimony go toward credibility. Id.

Plaintiff objected to defendant answering the question: "You describe what you observed about the way they repaired your bookcase." Quality of workmanship was one of the primary issues. This question was permissible of a nonexpert witness to establish the foundation for her opinion on the quality of workmanship of the plaintiff. Green, Georgia Law of Evidence 263, § 110; Code Ann. § 38-1708 (Code § 38-1708).

It is alleged that the trial court erred in failing to require the defendant to answer the question: "Did you curse a lot of people?" Plaintiff had stated on direct examination that it was "very possible" that she cursed because she "was very excited" and "may have been more graphic in person." We find no reason for reversal as it was tacitly admitted that defendant used profane language. Without detailing defendant's specific complaints, she testified that the contract was to be completed in 30 days and that statement was made in November and the following April — after boarding out her dog and cats, and living in a motel until the insurance company terminated her living expenses, and witnessing the lack of progress in the repair of her home and the quality of the repairs made — she testified: "the house is undone . . . There is more work to be redone. Moldings have been taken away and tossed away, apparently . . . It will cost me more to take them out and have them duplicated. In my opinion, Mr. Floyd did more damage to the house than the fire did." The defendant and her expert testified as to paint "flaking off the ceiling," 9 boards — running the length of the room, of tongue and groove ceiling had been "cut out" — "Cut is readily apparent. There was no attempt at caulking or puttying that . . . paint not adhering"; the cabinets between the living room and dining room were not sanded or well fitted, "it was plain raw lumber, not stained, varnished or painted . . .", the bookcase between the living room and dining room — left door not hung properly, had rough pine shelving which would not permit the door to close, it was partially painted, "unfinished wood showing through . . . they haven't been sanded," the

molding was unfinished — not sealed, painted or caulked, the crown molding in the living room did not match the molding in the remainder of the house, neither the nail holes nor the joints had been caulked; the transom between the living room and dining room "bulges out," the facing "hasn't been painted, shellacked, stained, or anything. It's just raw lumber." Wallpaper seams overlapped or did not meet and the old wallcover was "bleeding" through the new paper. The wallpaper was peeling off the wall in places. A 16-pane window in the front of the house had been replaced with a 12-pane window.

Mr. Floyd testified that "I probably did tell her it would take about 30 days." He admitted that the tongue and groove ceiling was not repaired properly. His assessment of the painting job was that "I didn't think paint would be peeling off the walls, but it wouldn't be a jam-up job, either . . . No, I wouldn't like it in my house." The standard for repair of the bookcase was to "[u]se finished lumber . . . it doesn't look good inside the cabinet." He also admitted that he "didn't get as good a job [on the parquet type floor] as we wanted to." He commented on the paint that "because of the failure of the surface, the job did not go back like it was before. I would not have accepted that particular standard of work." Given Mrs. Bean's admitted predilection for invectives, we understand Mr. Floyd's observation that "Mrs. Bean is a very profane woman . . ."

Plaintiff cites the failure of the court to permit him to question Mrs. Bean as to "when that lien was filed" that she testified Mr. Floyd had placed on her house. Counsel stated that he wanted to know when she found out about it. Mrs. Bean had testified that she attempted to get a loan to complete the repairs on her house but Banks "won't talk to you at all in the city, when there is a lien [on your house] about loaning money." Although this was a proper matter for cross-examination we find no prejudicial error in the curtailment.

In summary, there is no merit to enumerations of error 1 through 7.

2. The plaintiff contends the trial court erred in denying admission to its exhibit No. 5. Plaintiff describes it as "an invoice submitted to Mrs. Bean after we were ordered off the job . . ." Mrs. Bean admitted that she received it. Defendant objected to its admission as "self-serving." The court refused to admit the exhibit because of its reference to "Code" work, and what was required by the Code was not introduced. Plaintiff's brief does not address this basis for denying admissibility. The brief merely restates the enumeration of error. This is nothing more than plaintiff's contentions, unsupported by citation of authority or argument — thus under Rule 15 (c) (2) of this Court this enumeration is abandoned. *O'Neal v.*

*Haverty Furniture Co.,* 138 Ga. App. 346 (226 SE2d 141); *Fowler v. Ford Motor Credit Co.,* 143 Ga. App. 680 (240 SE2d 608).

3. Objection is made to admission of defendant's exhibits 3, 6, 7, 8, 15, 17, and 18. At trial plaintiff stated he had no objection to exhibit 15. Its admissibility may not now be contested at the appellate level. See *Velkey v. Grimes,* 214 Ga. 420, 421 (105 SE2d 224). Of the remaining exhibits 3, 17, and 18 show the condition of the house on the day plaintiff was terminated. The contract shows that $465 was charged for cleaning. Floyd testified that the contract was "to repair the fire damage and clean up from the fire." These photographs, depicting lack of cleanup, have relevance to the issues.

Exhibits 6, 7, and 8 show how plaintiff stored defendant's property during the repair work and the condition the house was in on plaintiff's departure. These photographs have little relevance to any issue except the general manner in which plaintiff executed the contract. In any event the plaintiff must show harm as well as error and prejudice has not been exhibited. *Continental Nut Co. v. Savannah Bank & Trust Co.,* 142 Ga. App. 509, 513 (236 SE2d 501).

4. It is alleged there was not "sufficient legal grounds" for admission of defendant's exhibits 31, 32, 33, 34, 35, 36 and 37. Defendant testified, without objection, that D-31 was a receipt for $450 it cost to have the floors redone in her house, D-32 was a repair bill for "packing" for the bath tub because the plaintiff had not properly cared for it; that D-33 was a bill she paid for repair of the toilet; that D-34 was a bill she had to pay to put a lock on the door which plaintiff had broken; D-35 was a receipt for repairs to the washer and dryer which had been broken by the plaintiff when he moved them; D-36 was for a plumbing bill of March 7; and D-37 was a piece of oak she purchased for the plaintiff to use in repairs on the floor of her house.

Materiality of the piece of oak wood to prove a disputed fact is non-existent. Defendant has not filed a brief to assist us and we are unaware of any basis for such offer. However, we discern no harm or prejudice to plaintiff in showing defendant purchased a piece of oak wood which was to be used in repair of her house — but evidently was not.

Plaintiff cites *Printup v. Mitchell,* 17 Ga. 558 (6) as authority for the fact that "[w]hen a witness, himself, is competent to testify, a receipt given by him is inadmissible." First, the defendant testified to each fact shown by these documents — without objection. Proof of the same facts by legally admissible evidence renders harmless admission of incompetent evidence. *Tucker v. Mappin,* 149 Ga. App. 847, 848 (256 SE2d 135).

Secondly, the trial court did not err in admitting the testimony

of the defendant that she had paid such charges for services and materials used in the repair of her home presumably caused by the fire or plaintiff's actions during the repair work — for which he was responsible under the contract. She was subject to cross-examination as to the obvious implication that the repairs were related to the fire but counsel saved his objection for the proffer of the receipt. See *Fountain v. DeKalb County,* 154 Ga. App. 302 (3) (267 SE2d 903). His objection was: "There has been no testimony by Mr. Griffin that he issued the receipt and it's his own handwriting. She can't testify to that." The receipt was also objected to on the ground that the evidence had not been connected to the fire.

A court does not err "in admitting testimony that [a party] had paid [certain bills] . . . since on the question of such payment the act itself rather than the manner of payment was the essential fact, and on that question either oral testimony or writing to show payment, such as a receipt or check, would be admissible." *Hicks v. Hicks,* 196 Ga. 541 (3) (27 SE2d 7); *Klem v. Southeast Ceramics,* 142 Ga. App. 610, 611 (236 SE2d 694). "Where the existence of a fact is the question at issue and not the contents of a writing, then oral or written evidence of the fact may both be primary evidence." *Acker v. Corinthian Condominium Corp.,* 145 Ga. App. 288, 292 (243 SE2d 683). "Nothing in the testimony indicates that the receipt was not the [defendant's] original receipt . . . Since the burden of proving alleged error is on the appellant and he has failed to illustrate that error has been committed, we must affirm the trial court's ruling that the receipt was admissible in evidence for whatever weight and effect the jury might ascribe to it." *Washington v. State,* 243 Ga. 329, 335 (253 SE2d 719), U. S. cert. den. We find no error requiring reversal in this enumeration.

5. The court refused to charge, at the request of the plaintiff, that "the reasonable value of the services rendered, if not fixed by contract, would be of or the amount that is generally charged by building contractors for the same or like services in the same community and under the same or similar circumstances or exist in the case now on trial," and "ordinarily, when one renders services or transfers property to another which the latter accepts, a promise is implied to pay the reasonable value thereof."

a. The plaintiff concedes that both of these instructions apply to "implied" contracts. However, plaintiff introduced evidence of an "express" contract. Plaintiff's exhibit 1 was titled. "Proposal/Contract" and identified the parties as "Dixie Bean" and "Restorations, Inc." (later changed to Classic Restorations) and called for the contractor "to furnish all material and labor necessary to install, construct and place the improvements described herein

on/in building located at 92 Waddell St . . . according to the following specifications: per estimate date 12/6/77 . . . All work shall be performed in a workmanlike manner . . . All material and labor shall be furnished for the cash sum of $7511.20 . . . *This agreement shall become binding* only upon written acceptance hereon by Contractor's authorized officer . . . or *upon his commencing performance, and upon such acceptance this shall constitute the entire Contract and be binding upon the parties* . . ." (Emphasis supplied.) The contract was signed by Dixie R. Bean and plaintiff noted his acceptance — in accordance with the contract terms — by "commencing performance." Assent and acceptance may be indicated by the act of beginning performance. *Gilchrist v. Skidmore,* 227 Ga. 134 (179 SE2d 341); *Gettier-Montanye, Inc. v. Davidson Granite Co.,* 75 Ga. App. 377 (2b) (43 SE2d 716); 6 EGL 77, Contracts, § 24; 1 Corbin on Contracts 262, § 63.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate." Code Ann. § 20-107 (Code § 20-107). Plaintiff's exhibit 1 identified the parties, the general work to be performed, the manner of performance, and the place where the work was to be performed. Plaintiff's exhibit 2, dated December 6, 1977, listed each specific item of work to be performed — room by room, and stated the specific amount to be charged for each line item. The offer of Classic Restorations was accepted by Dixie Bean by her signing the document, and by Classic Restorations by beginning performance of the contracted work. There was a stated subject matter and a specific consideration. We find a simple contract was entered into by the parties. Such contracts may be express or implied. See generally 6 EGL 65, Contracts, § 3. "An express contract is one where the intention of the parties and the terms of the agreement are declared or expressed by the parties, in writing or orally, at the time it is entered into." *Thomas v. Lomax,* 82 Ga. App. 592, 593 (2) (61 SE2d 790). "An implied contract is one not created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice." *Young v. Lewis,* 70 Ga. App. 627 (1a) (29 SE2d 267); 6 EGL 65, Contracts, § 3. "There cannot be an express and implied contract for the same thing existing at the same time between the same parties. It is only when the parties themselves do not expressly agree, that the law interposes and raises a promise; and no agreement can be implied where there is an express one existing." *Ramsey v. Langley,* 86 Ga. App. 544, 549 (4) (71 SE2d 863). There was an express contract in existence, thus neither quantum meruit (*Brannen v. Lanier,* 97 Ga. App. 30 (1) (102 SE2d 96)) nor quantum valebant was

applicable. *Ramsey v. Langley,* 86 Ga. App. 544, 550, supra. The court did not err in denying the requested charge.

b. Another valid reason lies for lack of error in the refusal of the trial court to charge this instruction. It failed to set forth the proper method for computation of damages in the breach of a construction contract by the contractor. See *Kendrick v. White,* 75 Ga. App. 307 (1) (2a) (43 SE2d 285); *Allied Enterprises v. Brooks,* 93 Ga. App. 832 (93 SE2d 392); *Spielberg v. McEntire,* 105 Ga. App. 545, 548 (125 SE2d 134). Accordingly, enumerations of error 11 and 12 are not meritorious.

6. The trial court, under the facts of this case, did not err in charging the jury if they found that Classic Restorations breached their contract with Mrs. Bean, the proper measure of damages "would be the difference in the fair market value of her home as remodeled by Classic Restorations and the fair market value of Mrs. Bean's home as it ought to have been remodeled by Classic Restorations under the contract between the parties." This is an acceptable method of computing damages where an express contract is breached by a contractor. *Kendrick v. White,* 75 Ga. App. 307 (1) (2a), supra; *Allied Enterprises v. Brooks,* 93 Ga. App. 832 (2), supra; *Spielberg v. McEntire,* 105 Ga. App. 545, supra; *Wilson v. Black,* 114 Ga. App. 735 (3) (152 SE2d 755); *Mabry v. Henley,* 123 Ga. App. 561, 567 (2) (181 SE2d 884); *Carroll-Leslie Builders v. Serwitz,* 136 Ga. App. 721 (2) (222 SE2d 178).

We ask that members of the bar note the distinction between the measure of damages where the jury finds an express contract has been breached by the building contractor, as stated above, and where the contract has been breached by the owner — as stated in *Crankshaw v. Stanley Homes,* 131 Ga. App. 840, 842 (1) (207 SE2d 241); and *Williams v. Kerns,* 153 Ga. App. 259 (265 SE2d 605). See also *McKee v. Wheelus,* 85 Ga. App. 525, 528 (69 SE2d 788); *Wilson v. Black,* 114 Ga. App. 735 (3), supra; *Crowe v. Holloway Develop. Corp.,* 114 Ga. App. 856, 858 (152 SE2d 913); *Windsor Forest v. Rocker,* 115 Ga. App. 317, 322 (2) (154 SE2d 627); *Mabry v. Henley,* 123 Ga. App. 561 (2), supra; *Ayers Enterprises v. Adams,* 131 Ga. App. 12 (3) (205 SE2d 16); 76 ALR2d 805; for other acceptable formulae in breaches of construction contracts.

7. We have examined the remaining enumerations of error and find them to be without merit.

*Judgment affirmed. Shulman and Carley, JJ., concur.*

SUBMITTED JULY 10, 1980 — DECIDED SEPTEMBER 10, 1980.

*Bruce D. Duncan,* for appellant.

*Peter S. Wynkoop,* for appellee.