[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14811
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00507-HLM

TERRENCE DAVIDSON,

                                                    Plaintiff - Appellant,

versus

ONIKA MARAJ,
an individual,
PINK PERSONALITY, LLC,
a Delaware limited liability company,

                                                    Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 24, 2015)

Before TJOFLAT, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

An unknown wit once quipped, "Life is an endless struggle full of frustrations and challenges, but eventually you find a hairstylist you like." According to hairstylist Terrence Davidson, though, his frustrations and challenges were just beginning once Onika Maraj, the artist more commonly known as Nicki Minaj, enlisted him as her stylist. In that role, Davidson designed many of the distinctive wigs for which Maraj is well known and that Maraj currently markets commercially. Davidson asserted various claims in the district court to recover what he feels he is owed for his role in Maraj's successful business ventures. The district court dismissed all of those claims with prejudice. Davidson now appeals the district court's dismissal of some of those claims—his quantum meruit, unjust enrichment, and promissory estoppel claims—as well as the district court's failure to permit further amendment of his complaint. After carefully combing through the record, we now affirm in part and reverse and remand in part.

## I.

### A.

Davidson weaves the following allegations into his First Amended Complaint. His business relationship with Maraj began in 2010 when she hired him to serve as her stylist. Between 2010 and 2013, Davidson designed a number of wigs for Maraj, including the "Pink Upper Bun Wig," the "Fox Fur Wig," the "Pink High Top Wig," the "Super Bass Wig," the "Half Blonde-Half Pink Wig,"

and the "VS Wig."  Davidson alleges that Maraj "understood and agreed" that she could use Davidson-designed wigs for only her personal use and during her public appearances.  He further maintains that from the outset of their business relationship, he also expected to be compensated—and that Maraj was aware of this expectation—if his wigs and wig designs were used for commercial purposes other than Maraj's personal appearance. Despite this "mutual understanding and agreement," Maraj allegedly launched a commercial wig line based on Davidson's designs.  But according to Davidson, any compensation he received from Maraj "was solely for his services to provide a personal hair style for a specific celebrity appearance by Maraj on a specific date."

Over the course of their business relationship, Davidson asserts that he discussed a variety of other business opportunities with Maraj and her agents. Specifically, Davidson contends that when he told Maraj's agent Al Branch that Davidson had been offered a contract for a reality television show, Branch and Maraj told Davidson to "hold off" on that contract and instead promised that Davidson and Maraj would appear together on a reality show.  Relying on this promise, Davidson declined the contract he had been offered.  Davidson had at least one meeting with television executives to discuss the proposed television show involving him and Maraj.

3

Maraj also allegedly promised to pursue a joint venture with Davidson based on Davidson's wig designs. Davidson avers that he no longer pursued his own wig venture based on Maraj's promise. As Davidson recounts, in November 2011, agents for Davidson and Maraj received a "full business proposal" for the wig venture, including budget and profit-loss projections. According to Davidson, he was the one to inform Maraj about the proposal. Despite his attempts to follow up on the proposal, however, Davidson claims Maraj and Branch refused to do so. In January 2013, Davidson ceased working as Maraj's hairstylist.

Davidson later discovered that Maraj had launched her own commercial wig venture, selling wigs that mirrored some of the designs Davidson had prepared for Maraj. He also learned that some of his wig designs served as the templates for the bottle tops of Maraj's fragrance line.

### B.

Davidson filed his initial Complaint against Maraj and Pink Personality, LLC, on February 21, 2014. [ECF No. 1.] In that pleading, Davidson asserted claims for tortious interference with prospective business relations, breach of an implied contract, unjust enrichment and *quantum meruit* (as a single count), conversion and wrongful appropriation of personal property, and violation of Georgia's Fair Business Practices Act. Maraj and Pink Personality, LLC, moved to dismiss the Complaint on May 16, 2014.

Davidson then filed his First Amended Complaint as a matter of course on June 5, 2014. This pleading, which is the operative complaint, asserts claims for "Quantum Meruit (Breach of Implied Contract)" in Count I, unjust enrichment in Count II, promissory estoppel in Count III, violation of Georgia's Fair Business Practices Act in Count IV, trade dress infringement under the Lanham Act in Count V, violation of Georgia's Deceptive Trade Practices Act in Count VI, and a claim for "litigation expenses" in Count VII.

Maraj and Pink Personality, LLC, again moved to dismiss the action. The district court granted the defendants' motion and dismissed all of Davidson's claims. The court dismissed the *quantum meruit* and unjust enrichment claims after finding that the First Amended Complaint pleaded "facts that, if true, would tend to prove the existence of an express contract between Plaintiff and Defendant Maraj," and recognized that the existence of such a contract barred a *quantum meruit* or unjust enrichment claim under Georgia law. On the other hand, the district court dismissed the promissory estoppel claim because it found the alleged promises to be "too indefinite and vague to be enforceable," and it held Davidson's reliance on them was unreasonable. The court also dismissed Davidson's claims under the Lanham Act, Fair Business Practices Act, and Deceptive Trade Practices Act, but he does not challenge those dismissals on appeal. Similarly, Davidson

5

does not challenge the district court's dismissal of Pink Personality, LLC, from the lawsuit.

Davidson never filed a motion to amend his complaint a second time, although in his response to the motion to dismiss, he included a cursory request to be granted leave to amend if any of his claims were dismissed. The district court dismissed Davidson's case with prejudice because Davidson had already amended his complaint once and because it determined that Davidson could not amend his complaint to assert any viable claims. Davidson now appeals the district court's dismissal of his claims for *quantum meruit*, unjust enrichment, and promissory estoppel. He further appeals the district court's denial of his request to amend his complaint.

## II.

We review *de novo* a district court's dismissal of a complaint under Rule 12(b)(6) for failure to state a claim. *Laskar v. Peterson*, 771 F.3d 1291, 1296 (11th Cir. 2014). At this stage, we accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1223 (11th Cir. 2014). To survive dismissal, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the

6

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

While generally the existence of affirmative defenses will not support dismissal, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). "The claim may be adequately stated . . . but in addition to the claim the complaint may include matters of avoidance that preclude the pleader's ability to recover. When this occurs, the complaint has a built-in defense and is essentially self-defeating." *Id.*

We review a district court's decision not to grant leave to amend a pleading for an abuse of discretion. *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1178 (11th Cir. 2013).

## III.

## A.

## 1.

Under Georgia law, to state a claim for *quantum meruit*, a plaintiff must show "(1) the performance of valuable services; (2) accepted by the recipient or at his request; (3) the failure to compensate the provider would be unjust; and (4) the

provider expected compensation at the time services were rendered." *Amend v. 485 Props.*, 627 S.E.2d 565, 567 (Ga. 2006). An unjust-enrichment claim arises when the plaintiff confers a benefit on the defendant for which the plaintiff should be equitably compensated. *City of Atlanta v. Hotels.com*, 710 S.E.2d 766, 771 (Ga. 2011). The doctrine of unjust enrichment differs from that of *quantum meruit* in that unjust enrichment does not require plaintiff to show an expectation of compensation; *quantum meruit*, by comparison, "relies on an implied promise of compensation." *See Yoh v. Daniel*, 497 S.E.2d 392, 394-95 (Ga. Ct. App. 1998).

Neither theory of recovery is available when an express contract exists governing all the claimed rights and responsibilities of the parties. *See Cochran v. Ogletree*, 536 S.E.2d 194, 196-97 (Ga. Ct. App. 2000); *Watson v. Sierra Contracting Corp.,* 485 S.E.2d 563, 570 (Ga. Ct. App. 1997); *Lord Jeff Knitting Co., Inc. v. Lacy*, 393 S.E.2d 55, 56 (Ga. Ct. App. 1990). When an implied-in-fact contract exists, a plaintiff may recover under the theory of *quantum meruit* but not unjust enrichment. *See Yoh*, 497 S.E.2d at 394; *Watson*, 485 S.E.2d at 570.[1] An express contract differs from an implied contract in that "[a]n express contract is

---

[1] Maraj argues several times in her brief that the existence of a "contract" defeats a *quantum meruit* claim. To the extent that she is asserting that both express and implied-in-fact contracts preclude a *quantum meruit* claim, she misunderstands Georgia law because an implied-in-fact contract can form the basis for a *quantum meruit* claim. *See Watson*, 485 S.E.2d at 570 ("Quantum meruit is not available when there is an express contract; however, if the contract is void, is repudiated, *or can only be implied*, then quantum meruit will allow a recovery if the work or service was accepted and if it had value to the recipient." (emphasis added)); 7 Ga. Jur. *Contracts* § 2:12 (2015).

8

one where the intention of the parties and the terms of the agreement are declared or expressed by the parties, in writing or orally, at the time it is entered into," *Thomas v. Lomax*, 61 S.E.2d 790, 791 (Ga. Ct. App. 1950), while an implied contract "is one not created or evidenced by distinct and explicit language." *Classic Restorations, Inc. v. Bean*, 272 S.E.2d 557, 562-63 (Ga. Ct. App. 1980) (citation and internal quotation marks omitted).

Here, the district court concluded that Davidson could "not sustain a claim for quantum meruit or unjust enrichment because the Amended Complaint pleads facts that, if true, would tend to prove the existence of an express contract between Plaintiff and Defendant Maraj." The district court specifically relied on three allegations to reach this conclusion: Davidson's designing of wigs and provision of them to Maraj; Maraj's payment for the wigs; and the limiting of the use of the wigs to Maraj's personal use. While we agree that this language, along with the rest of Davidson's allegations describing an agreement and understanding, must be read as evincing some type of contract between Davidson and Maraj—thus precluding an unjust-enrichment claim—we do not agree that this language, on its face, necessarily describes an *express* contract. *See Quiller*, 727 F.2d at 1069.

The allegations of the First Amended Complaint, construed in Davidson's favor, establish that in 2010, Davidson entered into a business relationship with Maraj to design and produce wigs for her. From Davidson's point of view, the

relationship contemplated two outcomes:  either Maraj would limit her use of Davidson's wigs and designs to her personal use, for which she would pay one price, or Maraj would also use the wigs and designs commercially, for which she would pay another price that was apparently never negotiated.  Maraj accepted the wig designs and paid the first price.  Maraj also has used the wig designs commercially, but she has not compensated Davidson for that use.

The complaint alleges that Maraj "agreed" to and "understood" these general principles, but it does not clearly allege that Davidson and Maraj reached this understanding through agreed-upon "distinct and explicit language" at the time the relationship was formed.  *See Bean*, 272 S.E.2d at 562-63; *Thomas*, 61 S.E.2d at 791. While one may certainly infer that any agreement or understanding was explicit, that inference is not compelled.  It is also reasonable to infer that the agreement was implicit—that Maraj accepted Davidson's terms implicitly by accepting the wig designs from him. *See, e.g.*, 7 Ga. Jur. *Contracts* § 2:1 (2015) ("Implied contracts are not evidenced by explicit language and arise from nonverbal conduct of the parties." (footnotes omitted)); Restatement (Second) of Contracts § 4 & cmt. a, illus. 1-2 (1981) (accepting goods without explicitly agreeing to pay for them nonetheless implies an intent to be bound contractually to pay for them).

10

To be sure, evidence may eventually establish that the inference of an express contract is correct and Davidson's claims will fail.  But both inferences are reasonable, and at the motion-to-dismiss stage *all* reasonable inferences *must* be drawn in Davidson's favor.  *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  Because the inference of an express contract governing the commercial use of Davidson's designs is not compelled by the allegations of the complaint, that inference cannot bar Davidson's *quantum meruit* claim at this stage of the litigation.  *See Quiller*, 727 F.2d at 1069.

Maraj brushes over Davidson's allegations, making much of a purported concession in Davidson's initial brief on appeal that an express contract existed between them "for the creation, design, and delivery of the wigs."  However, Davidson's brief merely states that "the only potential express contract between Mr. Davidson and Defendants was for Maraj's temporary use of the wigs that Mr. Davidson created at certain events," and recalls that his claim does not concern *that* use, but rather seeks recovery of the separately expected compensation due to Maraj's commercial use of the wigs.  Thus, viewed in the light most favorable to Davidson, any conceded express contract for "personal" wig services is distinct from the implied contract for "commercial" wig services and does not fulfill the express-contract function with respect to the alleged commercial-wig business arrangement.  *See Lord Jeff Knitting Co.*, 393 S.E.2d at 287 ("[T]here can be no

11

recovery in quantum meruit where an express contract governs *all the claimed rights and responsibilities* of the parties." (emphasis added)); *Gilbert v. Edmondson*, 388 S.E.2d 713, 714 (Ga. Ct. App. 1989) ("There cannot be an express and implied contract for the same thing existing at the same time between the same parties. It is only when the parties themselves do not expressly agree, that the law interposes and raises a promise." (citation and internal quotation marks omitted)); *Hardin v. Hunter*, 331 S.E.2d 83, 85 (Ga. Ct. App. 1985) ("Quantum meruit is an available remedy 'when there was no express stipulation as to the value of the services to be performed, and the compensation therefor necessarily depended upon an implied promise to pay.'" (citation omitted)); 7 Ga. Jr. Contracts § 2:5 ("The general rule that a contract will not be implied when an express contract exists is limited to matters addressed in the express contract." (footnotes omitted)). Here, the allegations do not compel the inference that an express contract existed governing Maraj's responsibilities to Davidson if she employed his wig designs commercially.[2]

---

[2] Some of the confusion on this point can be attributed to the unique circumstances of this case. *Quantum meruit* permits recovery for the reasonable value of services rendered. *See* O.C.G.A. § 9-2-7; *Amend*, 627 S.E.2d at 567. Here, the service rendered—the design of the wigs—is, in a sense, the same whether Maraj kept the wigs for her personal use or decided to market them commercially. However, Maraj has not pointed to any authority that prevents a savvy businessperson from recognizing the potential profitability of his creations and adjusting the price of his services based on the intended uses of his work. Of course, what the actual reasonable value of Davidson's services under these circumstances is remains a matter of proof.

**2.**

Maraj also contends that even if no express contract exists on the face of the complaint, Davidson's *quantum meruit* claim must fail because (1) he did not plead that the failure to compensate him would be unjust, and (2) Georgia law precludes recovery under *quantum meruit* when the services rendered were not novel. Neither argument is persuasive here.

To maintain a *quantum meruit* claim, a plaintiff must show, among other things, that "the failure to compensate the provider [of services] would be unjust." *Amend*, 627 S.E.2d at 567. Davidson has alleged that Maraj understood that Davidson expected to be compensated for the commercial use of his designs, that Maraj "wrongfully misappropriated" those designs to launch commercial ventures, that Maraj recognized the commercial value of Davidson's designs and has realized profits in excess of $1 million from those ventures, and that Maraj has not compensated him for the commercial use of his designs.

If proven, these allegations sufficiently describe an unjust failure to compensate Davidson for the commercial use of his designs. In fact, Maraj has not explained why these allegations insufficiently describe an unjust failure to compensate, but instead suggests that the compensation paid to Davidson for the personal use of the designs was compensation enough for Davidson's services. But whether the evidence may eventually demonstrate that Davidson was

13

adequately compensated for both his personal-use and commercial-use expectations, that defensive argument does not support the notion that Davidson insufficiently pled an unjust failure to compensate him for his services rendered with respect to the commercial use of his designs.

Maraj also contends that because wig designs "are nothing more than a combination of colors and a hairstyle, the designs lack novelty under Georgia law, which deprives Mr. Davidson of the value necessary to support quantum meruit and unjust enrichment claims." [Red Br. at 29.] Maraj cites two Georgia cases that stand for the proposition that non-novel ideas cannot give rise to property rights, cannot be used as consideration, and, therefore, cannot constitute conferred valuable benefits on which a *quantum meruit* claim is based. *See Burgess v. Coca-Cola Co.*, 536 S.E.2d 764, 769 (Ga. Ct. App. 2000); *Morton B. Katz & Assocs., Ltd. v. Arnold*, 333 S.E.2d 115, 117 (Ga. Ct. App. 1986).

Assuming without deciding that Davidson's wig designs are non-novel as a matter of Georgia law, these cases merely demonstrate that Davidson cannot maintain a *quantum meruit* claim for giving Maraj a non-novel idea. Nothing about these cases precludes recovering for the services rendered. Put another way, even if Davidson's wig designs lack legal novelty, his *quantum meruit* claim need not fail as a matter of law. We do not read Davidson's complaint as solely seeking recovery for the idea of the wigs, but also for the services he rendered in designing

14

and producing them, which, presumably, involved some expenditure of time and skill at the very least. In this sense, Davidson's case is distinguishable from *Burgess*. Burgess provided nothing more than an unsolicited concept to the Coca-Cola Company. *See Burgess*, 536 S.E.2d at 766, 767. Here, Davidson alleges, Maraj enlisted Davidson to design and construct distinctive wigs and impliedly promised to pay if they were used commerically. *Quantum meruit* provides an avenue of recovery for the provision of those services regardless of the novelty of the designs themselves.

**3.**

In sum, while we agree that Davidson's First Amended Complaint clearly demonstrates on its face some type of contractual relationship, thus precluding an unjust-enrichment claim, the allegations construed in Davidson's favor do not necessarily compel an inference than an express contract existed between Davidson and Maraj, particularly as it relates to commercial use of Davidson's wig designs. Because Davidson has otherwise sufficiently pled a claim for *quantum meruit*, we reverse the district court's dismissal of that claim but affirm its dismissal of the unjust-enrichment claim.

**B.**

Georgia has codified the doctrine of promissory estoppel in statute.  *See*

O.C.G.A. § 13-3-44; *Balmer v. Elan Corp.*, 599 S.E.2d 158, 162 (Ga. 2004).  The

elements of a promissory estoppel claim include the following:

> (1) the defendant made a promise or promises; (2) the
> defendant should have reasonably expected the plaintiffs
> to rely on such promise; (3) the plaintiffs relied on such
> promise to their detriment; and (4) an injustice can only
> be avoided by the enforcement of the promise, because as
> a result of the reliance, plaintiffs changed their position
> to their detriment by surrendering, forgoing, or rendering
> a valuable right.

*Mariner Healthcare, Inc. v. Foster*, 634 S.E.2d 162, 168 (Ga. App. Ct. 2006)

(citation omitted).  "Promissory estoppel does not apply to a promise that is vague,

indefinite, or of uncertain duration."  *Id.*  A promise enforceable by promissory

estoppel "need not meet the formal requirements of a contract," but "it must,

nonetheless, have been communicated with sufficient particularity to enforce the

commitment."  *Mooney v. Mooney*, 538 S.E.2d 864, 868 (Ga. Ct. App. 2000).  In

Georgia, promises merely to "work something out" about a future business venture

are unenforceable through promissory estoppel.  *See id.*

We identify two alleged promises from Davidson's pleading:  a promise by

Maraj that she and Davidson "would appear on a reality show together," and

Maraj's promise "to pursue a wig venture" with Davidson.  As the district court

16

concluded, we find neither promise to be sufficiently definite to support an action for promissory estoppel under Georgia law.

With respect to the reality show, Davidson does not allege any facts that take Maraj's alleged promise from the realm of speculative possibility to enforceable obligation. For example, he does not claim that Maraj set out any timeline for developing a television show or that she suggested who could produce a program featuring them. Although Davidson contends that he met with television executives to discuss such a project, he does not claim that Maraj organized or participated in those meetings in any way that could be construed as Maraj's making of a more definitive commitment.

Maraj's alleged promise about a future wig business venture is similarly vague and indefinite. The First Amended Complaint contains no allegations of the specific or material terms of such a business venture. Although Davidson asserts that an unnamed hair company sent him a "full business proposal," this proposal did not come from Maraj and cannot reasonably be viewed as part of her promise to him.[3] As a result, Maraj's alleged promises were, as a matter of law, nothing more than offers to "work something out" about a future television show and wig venture, and the district court did not err in finding them too vague to be enforceable.

---

[3] In fact, Davidson alleges that *he* was the one who informed Maraj about the proposal.

17

Davidson also argues on appeal that promissory-estoppel claims are too fact-intensive to be dismissed before discovery at the initial-pleading stage. But Davidson's argument misapprehends his burden at the motion-to-dismiss stage, which requires him to allege facts that, taken as true, state a plausible claim for relief. If he cannot do so, his claim cannot survive. *Cf. Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should, however, be resolved before discovery begins. Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." (footnote omitted)). Here, Davidson has not met his burden, so his promissory-estoppel claim was properly dismissed.

## C.

Finally, Davidson contends that the district court abused its discretion in dismissing his complaint with prejudice and without permitting him a second opportunity to amend his claims. But Davidson did not file a motion seeking leave to amend. Nor did he ever assert the substance of his proposed amendment before the district court. Rather, at the conclusion of his brief in opposition to the motion to dismiss, Davidson wrote simply that if "any of Plaintiff's claims [were]

18

insufficiently pled against one or both Defendants, Plaintiff respectfully requests that he be granted leave to file a second amended complaint."

It has long been established in this Circuit that a district court does not abuse its discretion by denying a general and cursory request for leave to amend contained in an opposition brief.  *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009); *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (per curiam) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").  Under our case law, Davidson's request for leave to amend was insufficient as a matter of law and the district court did not abuse its discretion in denying it.

## IV.

In conclusion, we reverse the district court's dismissal of Davidson's *quantum meruit* claim and affirm the district court's dismissal of all of his other claims as well as its denial of leave to amend.  The case is remanded to the district court for proceedings consistent with this opinion.

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**