Timothy C. Batten, Sr., United States District Judge
This case involves a failed real estate sales transaction. The purported buyer, Plaintiff Ridgeline, has sued the two Defendants (collectively, "MidCap") under theories of breach of contract, promissory estoppel, and unjust enrichment. Now before the Court is MidCap's motion [18] to dismiss.
I. Background
MidCap was the lender holding a note and security deed with respect to a medical office building in Acworth, Cobb County, Georgia, known as Governors Pavilion.
*1366 As of September 2017, the amount owing under the loan was approximately $5.7 million, and the loan was in default.
Before foreclosing on the property, MidCap and Ridgeline discussed the possibility of Ridgeline purchasing the property from the borrower. On August 16, Ridgeline's principal, Jeff Axley, sent an email to MidCap's authorized agent, Lawrence Brin, to "make sure [Ridgeline was] understanding this deal accurately."
In the email, Axley outlined five points summarizing the deal, the most salient being that: (1) Ridgeline would offer to purchase the property from the defaulting borrower; (2) Ridgeline would pay the existing $5.7 million loan balance down to $5 million; and (3) MidCap would loan Ridgeline the $5 million to purchase the property at an agreed-upon interest rate. Ridgeline made the offer to the defaulting borrower, but it rejected the offer.
Following the default of the loan, MidCap told Ridgeline that it intended to foreclose on the property and that after doing so it would sell the property to Ridgeline on the same terms-a purchase price of $5.7 million with MidCap financing $5 million of the purchase price at an agreed-upon interest rate.
Before the foreclosure sale, MidCap requested that Axley visit and inspect the property-which he did-so that Ridgeline would be ready to close shortly after the foreclosure sale.
In October, MidCap sent Ridgeline several documents related to the property, including lease agreements, a survey, and various reports. MidCap advised Ridgeline that the terms of MidCap's proposed sale to Ridgeline would not be reduced to writing prior to the foreclosure sale because MidCap did not want it to appear as if it was chilling the bidding at the foreclosure sale.
On November 7, MidCap credit bid the amount of the debt at the foreclosure sale and thus acquired the property. Axley was present at the foreclosure sale but did not bid because of his understanding that MidCap would purchase the property and then sell it to Ridgeline. After the sale, Axley and Brin met and agreed that MidCap would sell the property to Ridgeline.
On November 8, Axley emailed Brin and requested a term sheet and stated that after MidCap dealt with the paperwork from the foreclosure sale, the parties could "address the contract between us."
On November 9, MidCap emailed a letter (the "term sheet") to Ridgeline, outlining in detail the proposed financing terms for the sale.
In response, Ridgeline paid the good faith deposit, and on November 14 the parties held a conference call to discuss the closing process. Then things changed.
On December 7, Brin told Axley that MidCap might not sell the property to Ridgeline because it had received a lucrative offer to lease all the vacant space in the property which greatly increased its value-perhaps even doubling it. He also told Axley that MidCap would reimburse Ridgeline for the deposit, expenses incurred, and an additional amount to be determined. Five weeks later, on January 12, 2018, Brin confirmed that MidCap would not go forward with the sale.
On January 30, Ridgeline informed MidCap that it was willing and able to close on the property on the financing terms in the term sheet or for cash. MidCap refused. Ridgeline sued.
On April 27, Ridgeline filed an amended complaint, alleging six counts. First, it seeks specific performance of the alleged verbal contract to sell the property. It also asserts claims for breach of contract for the sale of the property and breach of the *1367 contractual duty of good faith and fair dealing. Ridgeline alternatively asserts claims for promissory estoppel and unjust enrichment, and it seeks to recover its expenses of litigation pursuant to O.C.G.A. § 13-6-11.
On May 18, MidCap filed this motion to dismiss, arguing that it has no contractual or other obligation to Ridgeline.
II. Legal Standard on a Motion to Dismiss
Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Chaparro v. Carnival Corp. , 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).
Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; Chandler v. Sec'y of Fla. Dep't of Transp. , 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting id. ). The Supreme Court has explained this standard as follows:
A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (citation omitted) (quoting Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ); see also Resnick v. AvMed, Inc. , 693 F.3d 1317, 1324-25 (11th Cir. 2012).
Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level ...." Twombly , 550 U.S. at 555-56, 127 S.Ct. 1955 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. at 555, 127 S.Ct. 1955 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, Powell v. Thomas , 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiffs legal conclusions, including those couched as factual allegations, Iqbal , 556 U.S. at 678, 129 S.Ct. 1937.
Accordingly, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal , 556 U.S. at 679, 129 S.Ct. 1937.
III. Discussion
A. Breach of Contract
Ridgeline is not suing MidCap for breach of the November 9 term sheet. Rather, it contends that the parties formed a binding oral contract prior to the delivery of the term sheet for the sale of the property, and that the term sheet related only to financing. MidCap responds that its promise to sell the property is unenforceable because the promise was one to sell land, and such promises must be in writing. O.C.G.A. § 13-5-30(4).
Although Ridgeline points to emails between the parties, there is no writing signed by MidCap containing a promise to sell the property. Moreover, the term sheet pertained only to the financing of the purchase.
*1368 Ridgeline responds that there was sufficient part performance of MidCap's promise to remove it from the statute of frauds. The statute of frauds does not apply "[w]here there has been performance on one side, accepted by the other in accordance with the contract[.]" Id. § 13-5-31(2).
In order for the part-performance exception to the statute of frauds to apply, "such performance must be essential to the terms of the contract sued upon, and substantial enough to result in a detriment to one party and a benefit to the other to such an extent that the refusal to enforce the contract will result in fraud." Breckenridge Creste Apartments, Ltd. v. Citicorp Mortg., Inc. , 826 F.Supp. 460, 464-65 (N.D. Ga. 1993), aff'd sub nom. Breckenridge Creste v. Citicorp , 21 F.3d 1126 (11th Cir. 1994) (citing Hudson v. Venture Indus., Inc. , 243 Ga. 116, 252 S.E.2d 606, 608 (1979) ).
Thus, the Court must determine whether there has been "such part performance of the contract as would render it a fraud ... if the Court did not compel a performance." Payne v. Warren , 282 Ga.App. 524, 639 S.E.2d 528, 530 (2006). Further, "the part performance shown must be consistent with the presence of a contract and inconsistent with the lack of a contract." Rose v. Cain , 247 Ga.App. 481, 544 S.E.2d 453, 456 (2001).
Regarding part performance, Ridgeline contends that it and MidCap agreed that Ridgeline would not bid at the foreclosure sale and that MidCap would credit bid the amount of the defaulting borrower's debt. This evidence, however, is not inconsistent with the lack of a contract to sell the property. Indeed, a lender purchasing property through a foreclosure sale after a borrower has defaulted is a commonplace occurrence and not indicative of an agreement to later convey the property.
Axley's attendance at the foreclosure sale and his failure to bid on the property, on the other hand, are arguably consistent with an oral agreement and not inconsistent with the lack of a contract. See id. , 544 S.E.2d at 456-57 (holding that while possession of property and making monthly payments were consistent with an oral agreement, they were also consistent with a rental agreement and thus not inconsistent with an agreement to purchase the property).
However, Axley's acts and omissions were not "essential to the terms of the contract sued upon [nor] substantial enough" to constitute part performance resulting in a fraud. Breckenridge Creste , 826 F.Supp. at 464. "Acts that are merely preparatory or preliminary to the performance of a contract do not remove the promise from the statute of frauds as they do not tend to prove the terms of the contract sued upon." Id. at 465 (citing Hudson , 252 S.E.2d at 608 ).
Axley's attendance and failure to bid at the foreclosure sale were at most preliminary and not essential to any material term of the alleged contract, such as payment of the purchase price or delivery of the deed transferring title. Therefore, Ridgeline has failed to show that the part performance exception to the statute of frauds applies.
For the foregoing reasons, Ridgeline's claims for breach of contract and the remedy of specific performance will be dismissed. And Ridgeline concedes that it cannot maintain a claim for breach of the duty of good faith and fair dealing in the absence of a contract. As such, that claim will also be dismissed.
B. Promissory Estoppel
Ridgeline alternatively asserts a claim for promissory estoppel. It argues that prior to the foreclosure sale MidCap orally *1369 promised to sell Ridgeline the property and that Ridgeline reasonably relied upon that promise and therefore is entitled to enforce it.
MidCap responds that the doctrine of promissory estoppel does not apply here and that even if it did Ridgeline would lose because any reliance Ridgeline placed on MidCap's alleged oral promise to sell was unreasonable as a matter of law.
Georgia law recognizes the doctrine of promissory estoppel. It is codified at O.C.G.A. § 13-3-44, though Georgia courts allowed promissory estoppel claims even before its codification. Insilco Corp. v. First Nat'l Bank of Dalton , 248 Ga. 322, 283 S.E.2d 262, 263 (1981) (citing precodification cases).[1]
Originally, promissory estoppel was available for one purpose: to allow reasonable reliance on a promise to substitute for a lack of consideration and thereby establish a binding contract. See, e.g., Promissory Estoppel , BLACK'S LAW DICTIONARY (10th ed. 2014) ("The principle that a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor should have reasonably expected the promisee to rely on the promise ....").
Now, however, Georgia courts use promissory estoppel to allow enforcement of promises that would fail under traditional rules of contract law. See, e.g. , Sun-Pac. Enters., Inc. v. Girardot , 251 Ga.App. 101, 553 S.E.2d 638, 642 (2001), in which the Georgia Court of Appeals stated that "promissory estoppel allows enforcement of a promise that would otherwise be unenforceable under the statute of frauds." (citing 20/20 Vision Ctr., Inc. v. Hudgens , 256 Ga. 129, 345 S.E.2d 330, 335 (1986) ).
The Eleventh Circuit has held that promissory estoppel claims are "extremely fact-specific" and "not susceptible to the application of generalized rules." Doll v. Grand Union Co. , 925 F.2d 1363, 1372 (11th Cir. 1991).
A recent decision by the Georgia Court of Appeals recites the elements of a promissory estoppel claim: "the defendant made a promise upon which he reasonably should have expected the plaintiff to rely, the plaintiff relied on the promise to his detriment, and injustice can be avoided only by enforcing the promise because the plaintiff forwent a valuable right." Mbigi v. Wells Fargo Home Mortg. , 336 Ga.App. 316, 785 S.E.2d 8, 20 (2016) (quoting Thompson v. Floyd , 310 Ga.App. 674, 713 S.E.2d 883, 890 (2011) ); see also Zhong v. PNC Bank, N.A. , 345 Ga.App. 135, 812 S.E.2d 514, 525 (2018).
MidCap first opposes Ridgeline's promissory estoppel claim by citing Davidson v. Maraj , 609 F. App'x 994, 1001 (11th Cir. 2015), for the proposition that promissory estoppel does not apply to a promise that is vague or indefinite. In Davidson , the plaintiff's promissory estoppel claim was based upon the defendant's alleged promises to the plaintiff that the parties "would appear on a reality show" and "pursue a wig venture" together.
The promises in Davidson were indeed vague and indefinite. But they were not like MidCap's simple and straightforward *1370 promise to sell the property to Ridgeline. Accepting the well-pleaded facts in Ridgeline's amended complaint as true, MidCap promised to sell the property to Ridgeline for approximately $5.7 million. At the motion to dismiss stage, these allegations are "sufficiently definite to support an action for promissory estoppel under Georgia law."[2] Id.
MidCap next contends that its alleged promise to sell the property to Ridgeline was a mere promise to "work something out regarding a future business venture." MidCap again cites Davidson for the proposition that such promises are unenforceable agreements to agree. While Davidson does state this principle of law, it is again inapposite; MidCap specifically promised to sell the property to Ridgeline at an agreed-upon price.
Next, MidCap argues that Ridgeline's reliance on MidCap's alleged promise to sell the property was unreasonable as a matter of law. Citing paragraph 1 of the amended complaint ("Ridgeline acquires and sells commercial real estate, including small medical office buildings."), MidCap asserts that Ridgeline "is a sophisticated corporate entity that can be assumed to know the risks and advantages of real estate transactions that make doctrines such as the Statute of Frauds necessary." [22] at 11.
MidCap similarly argues that "Plaintiff's reliance on MidCap's discussions and representations regarding the Property was unreasonable in the face of Plaintiff's extensive experience in the commercial real estate market." Id. at 12-13.
Indeed, Ridgeline's counsel conceded at oral argument that Ridgeline's principal, Axley, is a sophisticated businessperson.
"Questions of reasonable reliance are usually for the jury to resolve." Reynolds v. CB&T , 342 Ga.App. 866, 805 S.E.2d 472, 478 (2017) (quoting Ambrose v. Sheppard , 241 Ga.App. 835, 528 S.E.2d 282, 284 (2000) ). However, where the reliance is unreasonable as a matter of law, the promissory estoppel claim fails.
There are several problems with Ridgeline's purported reliance on MidCap's promise to sell it the property.
First, Axley understood that MidCap's promise was to bid at the foreclosure sale the approximately $5.7 million that the then-owner of the property owed to MidCap. The parties never discussed what would happen if a third party (or even the then-owner) had outbid MidCap at the foreclosure sale, which would have prevented MidCap from selling the property to Ridgeline. This raises a question as to the reasonableness of Ridgeline's reliance.
More problematic for Ridgeline is the fact that it is a sophisticated business with years of experience purchasing and selling commercial real estate. This Court is dubious about the Georgia doctrine of promissory estoppel being used to allow a multi-billion-dollar real estate manager with years of business experience to enforce an oral promise to sell a $5.7 million piece of commercial real estate. Although the Court has found no Georgia cases directly on point, the promissory estoppel law of other jurisdictions supports the Court's skepticism. See, e.g. , 168th & Dodge, LP v. Rave Reviews Cinemas, LLC , 501 F.3d 945, 957 (8th Cir. 2007) (holding that sophisticated parties could not reasonable rely on oral assurances to enforce a twenty-year lease agreement); Garwood Packaging, Inc. v. Allen & Co. , 378 F.3d 698, 705 (7th Cir. 2004) (holding that reasonable *1371 reliance depends on knowledge of promisee and sophisticated party's reliance on optimistic assurances were unreasonable as a matter of law); RCM Supply Co. v. Hunter Douglas, Inc. , 686 F.2d 1074 (4th Cir. 1982) (holding that reliance on an oral promise absent any writing was unreasonable as a matter of law where the parties involved were sophisticated businesses); G & M Oil Co. v. Glenfed Fin. Corp. , 782 F.Supp. 1085, 1091 (D. Md. 1991) (recognizing that "sophisticated business entities do not enter into multimillion dollar transactions without a comprehensive writing"); but see Milandco Ltd. v. Wash. Capital Corp. , No. 97-8119, 2001 WL 1609424 at *9 (E.D. Pa. Dec. 12, 2001) ("The defendants' argument has force, but whether any reliance by the plaintiffs was reasonable is more properly decided by a jury."); U S W. Fin. Servs., Inc. v. Tollman , 786 F.Supp. 333, 343 ("Although defendants were experienced businessmen and represented by counsel, whether or not reliance is reasonable depends on specific factual circumstances. Certainly, there are situations in which sophisticated businessmen may be forced by circumstances to rely on promises they ordinarily would consider risky or uncertain.").
The Court's skepticism is also bolstered by several cases in which the Eleventh Circuit has held in the promissory estoppel context that it "usually is unreasonable to rely on a substantial promise that has not been reduced to writing." Johnson v. Univ. Health Servs., Inc. , 161 F.3d 1334, 1340 (11th Cir. 1998) ; accord Wells Fargo Bank v. Thomas , No. 3:10-cv-92-TWT, 2011 WL 13234702, at *4 (N.D. Ga. Mar. 16, 2011) ; Reindel v. Mobile Content Network Co. , 652 F.Supp.2d 1278, 1291 (N.D. Ga. 2009).
Nevertheless, at the motion to dismiss stage, the Court will allow Ridgeline's promissory estoppel claim to proceed, with the expectation that the Court will revisit the issue on summary judgment.[3]
*1372 C. Unjust Enrichment
Whereas promissory estoppel focuses on the detriment to the plaintiff, unjust enrichment focuses on the benefit retained by the defendant. "To state a claim for unjust enrichment a plaintiff must 'show that (1) a benefit was provided, (2) compensation for that benefit was not received, and (3) the failure to compensate renders the transaction unjust.' " Hill for Credit Nation Capital, LLC v. Duscio , 292 F.Supp.3d 1370, 1378 (N.D. Ga. 2018) (quoting Ralls Corp. v. Huerfano River Wind, LLC , 27 F.Supp.3d 1303, 1329 (N.D. Ga. 2014) ).
The benefit must have been provided by the plaintiff. Brooks v. Branch Banking and Trust Co. , 107 F.Supp.3d 1290, 1298 (N.D.Ga.2015) ("To prevail on a claim for unjust enrichment, a plaintiff thus must ultimately prove (1) that it conferred a benefit on the defendant and (2) that equity requires the defendant to compensate for that benefit." (emphasis added) (quoting Schutz Container Sys., Inc. v. Mauser Corp. , No. 1:09-cv-3609-RWS, 2012 WL 1073153, at *35 (N.D. Ga. Mar. 28, 2012) ) ).
MidCap argues that Ridgeline fails to allege that Ridgeline conferred a benefit upon MidCap by not bidding on the property at the foreclosure sale. Specifically, MidCap contends that the property increased in value because of a third party's interest in leasing the property, not because of any benefit that Ridgeline conferred upon MidCap by not bidding at the foreclosure sale.
The Court agrees with MidCap and finds that Ridgeline has not conferred a benefit that would result in unjust enrichment if Ridgeline were not compensated. The benefit for which Ridgeline seeks compensation is the benefit MidCap fortuitously obtained when a third party offered to lease the entire building, thereby increasing the property's value. Ridgeline does not allege that it caused the third party to offer to lease the property, and Ridgeline's conduct in not bidding at the foreclosure sale is not what conferred upon MidCap the increase in the property's value. Accordingly, the Court will dismiss this claim.
D. Attorneys' Fees
The dismissal of some of Ridgeline's claims necessarily results in the dismissal of its derivative claims for attorneys' fees incurred in connection with those claims. However, expenses of litigation under O.C.G.A. § 13-6-11 are recoverable with respect to Ridgeline's surviving claim for promissory estoppel, SKB Indus., Inc. v. Insite , 250 Ga.App. 574, 551 S.E.2d 380, 384 (2001), and MidCap has failed to show that Ridgeline's expenses of litigation claim lacks merit as a matter of law.
"[T]he determination of whether there has been bad faith in support of an award pursuant to OCGA § 13-6-11 is normally an issue for a jury." Caldwell v. Church , 341 Ga.App. 852, 802 S.E.2d 835, 842 (2017) (quoting Metro Atlanta Task Force for the Homeless v. Ichthus Cmty. Tr. , 298 Ga. 221, 780 S.E.2d 311, 326 (2015) ). Thus, MidCap's motion to dismiss will be granted in part and denied in part with respect to this claim.
IV. Conclusion
For the foregoing reasons, MidCap's motion [18] to dismiss is granted as to counts one, two, three, and five, but denied as to counts four and the portion of count six related to Ridgeline's promissory estoppel claim.
IT IS SO ORDERED this 24th day of September, 2018.

In Polo Golf & Country Club Homeowners' Ass'n, Inc. v. Rymer , 294 Ga. 489, 754 S.E.2d 42, 44 n.2 (2014), the Georgia Supreme Court noted that "This code section adopts the Restatement (Second) of Contracts 2d, § 90 and, as the Restatement notes, is often viewed as being promissory estoppel." Quoting Folks, Inc. v. Dobbs , 181 Ga.App. 311, 352 S.E.2d 212, 215 (1986), the court added, "Although the Restatement embraces promissory estoppel under the provisions for contracts enforceable without consideration, Georgia views it as a doctrine wherein consideration is supplied by the reliance of the promisee on the promise of another."

Whether the promise was too indefinite to be enforced because it did not address details such as what would happen if MidCap were outbid by a third party at the foreclosure sale is a question better addressed at summary judgment.

MidCap also argues that Ridgeline has failed to show that it can recover damages for the lost opportunity and its expenses incurred in conducting due diligence and negotiating with MidCap. Although such an argument may be premature and insufficient to support dismissal of a promissory estoppel claim at the motion to dismiss stage, it appears that this argument has merit. See Waltner v. Aurora Loan Servs., LLC , 551 F. App'x 741, 745-46 (5th Cir. 2013) ("Damages on a promissory estoppel claim are limited to reliance damages."); Merex A.G. v. Fairchild Weston Sys., Inc. , 29 F.3d 821, 826 (2d Cir. 1994) ("Prevailing on a promissory estoppel claim, however, sometimes entitles a party only to its out-of-pocket expenses, rather than to benefit-of-the-bargain damages.") (quoting Arcadian Phosphates, Inc. v. Arcadian Corp. , 884 F.2d 69, 73 (2d Cir. 1989) ); McCloskey v. Novastar Mortg., Inc. , No. 05-1162, 2007 WL 2407103, at *7 (E.D. Pa. Aug. 21, 2007) ("a plaintiff is permitted to prove a promissory estoppel claim even when the underlying promise is subject to the Statute of Frauds, but his recovery is limited to reliance damages in the absence of fraud."); Milandco , 2001 WL 1609424, at *9 ("Defendants further argue that if summary judgment is denied on promissory estoppel, plaintiffs' damages are limited to reliance damages. The Court agrees."); Allied Vista, Inc. v. Holt , 987 S.W.2d 138, 142 (Tex. App. 1999) ("in a claim for promissory estoppel, only reliance damages are allowed."); Christensen v. Intelligent Sys. Master Ltd. P'shp , 197 Ga.App. 778, 399 S.E.2d 495, 496-97 (1990) ("The measure of damages for plaintiff's claim of promissory estoppel is the amount advanced for operating funds in reliance on defendant's promise to execute the sale agreement and reimburse plaintiff as part of the payment."). See generally Mary E. Becker, Promissory Estoppel Damages , 16 Hofstra L. Rev. 131, 147-48 (1987) (observing that there is a "strong case" for awarding restitution relief instead of contract damages where the statute of frauds renders the contract unenforceable: "If full expectation damages (or specific performance) were available once there had been reliance, there would be little left of the statutory bar.").